1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  AMBER N. WIPFLER, State Bar No. 238484
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone: (415) 703-5721
    Fax:  (415) 703-5843
8   Email:  Amber.Wipfler@doj.ca.gov

9  Attorneys for Respondent Warden B. Curry

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  **HAROLD D. DYSON,**                    C07-4955 MJJ

16                          Petitioner,     **ANSWER TO ORDER TO SHOW
                                            CAUSE; MEMORANDUM OF
17          v.                              POINTS AND AUTHORITIES**

18  **BEN CURRY, Warden,**

19                          Respondent.     Judge:  The Honorable Martin Jenkins

20

21

22

23

24

25

26

27

28

Ans. to OSC; Mem. of P. & A.                              *Dyson v. Curry*
                                                          C07-4955 MJJ

1

**TABLE OF CONTENTS**

2
Page

3      INTRODUCTION                                                                                      1

4      ANSWER TO THE ORDER TO SHOW CAUSE                                                2

5      MEMORANDUM OF POINTS AND AUTHORITIES                                        7

6      ARGUMENT                                                                                            7

7      I.    THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
             CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE
8            APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
             NOR BASED ON AN UNREASONABLE DETERMINATION
9            OF THE FACTS.                                                                            7

10           A.    The State Superior Court Decision Was Not Contrary to or an
                   Unreasonable Interpretation of Clearly Established Federal Law.      8
11
                   1.    Petitioner received all process due under the only United States
12                       Supreme Court law addressing due process in the parole context.   8

13                 2.    The Ninth Circuit's some-evidence test is not clearly established
                         Supreme Court law.                                                      10
14
                   3.    Even if the some-evidence standard was clearly established federal
15                       law, the standard was correctly applied by the state courts.         12

16                 4.    The Board may rely on static factors to deny parole.                  13

17           B.    The State Court Decision Upholding the Board's Parole Denial Was
                   Based On a Reasonable Interpretation of the Facts.                        15
18
       II.   PETITIONER FAILS TO PROVE THAT THE BOARD IS
19           SYSTEMATICALLY BIASED.                                                          15

20     CONCLUSION                                                                                     16

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bd. of Pardons v. Allen*
482 U.S. 369 (1987                                                           5

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003)                                             12, 14

*Carey v. Musladin*
___ U.S. ___, 127 S.Ct. 649 (2006)_ U.S. ___, 127              5, 10, 11

*Crater v. Galaza*
___ F.3d___, 2007 WL 1965122, *2, 5 and n.8
(9th Cir. July 9, 2007)                                                        11

*Foote v. Del Papa*
486 F.3d 1166, 2007 WL 1469776
(9th Cir. 2007)                                                                 11

*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*
442 U.S. 1 (1979)                                                        5, 8-12, 16

*In re Dannenberg*
34 Cal. 4th 1061 (2005)                                                        5

*Irons v. Carey*
___F.3d.___, 2007 WL 2027359 (9th Cir. 2007)                         12

*Irons v. Carey*
479 F.3d 658 (9th Cir. 2007)                                                14

*Jancsek v. Oregon Board of Parole*
833 F.2d 1389 (9th Cir. 1987)Ñ                                          10, 11

*Johnson v. Zerbst*
304 U.S. 458 (1938)                                                           15

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                               15

*Lockyer v. Andrade*
583 U.S. 63 (2003)                                                             7

*McQuillion v. Duncan*
306 F.3d 895 (9th Cir. 2002)                                             10, 11

*Miller-El v. Cockrell*
537 U.S. 322 (2003)                                                         7, 12

*Miller-El v. Dretke*
545 U.S. 231 (2005)                                                            8

**TABLE OF AUTHORITIES** (continued)

Page

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                        11

*Sandin v. Connor*
515 U.S. 472 (1995)                          5

*Sass v. California Board of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)           5, 6, 12, 14

*Superintendent v. Hill*
472 U.S. 445 (1985)           5, 8, 10, passim

*Wainwright v. Greenfield*
474 U.S. 284 (1986)                         11

*Wilkinson v. Austin*
545 U.S. 2384 (2005)                        10

*Williams (Terry) v. Taylor*
529 U.S. 362 (2000)                          7

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                          8

**Constitutional Provisions**

Sixth Amendment                             11

**Regulations**

California Code of Regulations Title 15
    § 2402(c)(1)                          6, 13

**Statutes**

28 United States Code
    § 2244(d)(1)                            6
    § 2254(e)(1)                         8, 15
    § 2254(d)(1-2)                     7, 15
    § 2254(d)(2)                          15

California Penal Code
    § 3401                              13
    § 3041(b)                           6

**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)    5, 7, 8, passim

1 EDMUND G. BROWN JR.
Attorney General of the State of California
2 DANE R. GILLETTE
Chief Assistant Attorney General
3 JULIE L. GARLAND
Senior Assistant Attorney General
4 ANYA M. BINSACCA
Supervising Deputy Attorney General
5 AMBER N. WIPFLER, State Bar No. 238484
Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
7   Telephone: (415) 703-5721
  Fax: (415) 703-5843
8   Email: Amber.Wipfler@doj.ca.gov

9 Attorneys for Respondent Warden B. Curry

10

11 IN THE UNITED STATES DISTRICT COURT

12 FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 SAN FRANCISCO DIVISION

14

15 **HAROLD D. DYSON,**          C07-4955 MJJ

16                 Petitioner,    **ANSWER TO ORDER TO SHOW**
**CAUSE; MEMORANDUM OF**
17      **v.**                      **POINTS AND AUTHORITIES**

18 **BEN CURRY, Warden,**

19                Respondent.    Judge: The Honorable Martin Jenkins

20

21 **INTRODUCTION**

22      Petitioner Harold D. Dyson is a California state inmate at the Correctional Training Facility,

23 proceeding pro se in this habeas corpus action. Petitioner, who is currently serving a fifteen-

24 year-to-life sentence for second-degree murder, alleges that the Board of Parole Hearings

25 unconstitutionally denied him parole at his 2006 parole suitability hearing. Petitioner claims that

26 no evidence supported the Board's decision, and that the Board based its denial on an unlawful

27

28

Ans. to OSC; Mem. of P. & A.                                     *Dyson v. Curry*
*C07-4955 MJJ*

1  no-parole policy.[1/]  On October 24, 2007, this Court issued an Order to Show Cause.  Respondent

2  Warden Ben Curry answers as follows:

3  **ANSWER TO THE ORDER TO SHOW CAUSE**

4      In response to the Petition for Writ of Habeas Corpus dated September 25, 2007,

5  Respondent admits, denies, and alleges the following:

6      1.    Petitioner is in the lawful custody of the California Department of Corrections and

7  Rehabilitation following his January 4, 1984 conviction of second-degree murder.  (Ex. A,

8  Abstract of Judgment.)  He is currently serving an indeterminate sentence of fifteen years to life.

9  (Ex. B, Parole Hearing Transcript. p. 1.)  Petitioner does not challenge his underlying conviction

10  in the current proceeding.

11     2.    Respondent affirmatively alleges that on February 6, 1983, victim Hung Quy Chu

12  pulled his car across two lanes and collided with a car driven by the 26-year-old Petitioner.  (Ex.

13  C, District Attorney's Summary of Offense at 1.)  Police were called to the scene, and the

14  responding officer noticed no extensive damage to either of the cars.  (*Id.*)  The officer spoke

15  with both drivers, and noted that Petitioner did not seem particularly upset.  (*Id.*)  After the

16  officer completed the accident report, Petitioner asked him if he was going to arrest the victim.

17  (*Id.*)  The officer explained that this was not normally done, and Petitioner returned to his car.

18  (*Id.*)  The officer walked to a nearby corner to complete a diagram of the accident scene when he

19  heard two gunshots.  (*Id.*)  He saw Petitioner standing next to the driver's side door of the

20  victim's car, and observed Petitioner drop a .25 caliber handgun.  (*Id.*)  Petitioner put his hands

21  in the air and said, "That's right, I shot the son of a bitch."  (*Id.*)  The victim was found slumped

22  in the driver's set of his car with a bullet wound to his chest and arm.  (*Id.*)  Paramedics

23  unsuccessfully attempted to resuscitate the victim, and he died of his injuries.  (*Id.* at 2.)

24     3.    Respondent affirmatively alleges that according to Petitioner, he murdered the victim

25  because he was under a "lot of mental pressure."  (Ex. D, Probation Officer's Report at 2.)

26  _____

27     1. Petitioner also alleges that the Board's decision violates the terms of his plea agreement.
    However, because he did not exhaust this claim in the state courts, and because this Court did not
28  mention this claim in its Order to Show Cause, it will not be addressed in this pleading.

Ans. to OSC; Mem. of P. & A.                                      *Dyson v. Curry*
                                                                  C07-4955 MJJ

1      4.    Respondent affirmatively alleges that Petitioner has not participated in any self-help

2  activities or therapy since 2002. (Ex. B at 45; Ex. E, Postconviction Progress Report.)

3  Respondent further affirmatively alleges that Petitioner has not participated in vocational training

4  since 1987. (Ex. B at 32.)

5      5.    Respondent affirmatively alleges that Petitioner lacked solid parole plans. (Ex. B at

6  22-25.) He did not have any job offers or leads, and offered only an undated letter from his

7  brother as proof of residential plans. (*Id.* at 28-29.)

8      6.    Respondent affirmatively alleges that the Oakland Police Department opposed

9  Petitioner's release on parole. (Ex. B at 35-37.)

10     7.    Respondent admits that on January 24, 2006, the Board determined that Petitioner

11  would pose an unreasonable risk of danger to society or threat to public safety if released from

12  prison. (Ex. B at 44, 47.) The Board found that Petitioner's commitment offense was especially

13  cruel and callous, as Petitioner carried out the murder in a dispassionate manner with no

14  provocation, and killed the victim for an extremely trivial reason. (*Id.* at 44-45, 48.) The Board

15  also noted that Petitioner disregarded public safety by discharging his weapon on a public

16  thoroughfare, and that he had a clear opportunity to desist, but continued his criminal act. (*Id.* at

17  45.) In addition, the Board found that Petitioner had not sufficiently participated in self-help and

18  therapy, particularly given the nature of the crime, and that his vocation was outdated. (*Id.* at 45-

19  46.) The Board further determined that Petitioner lacked sufficient parole plans, and as required

20  by law, noted the opposition of the Oakland Police Department. (*Id.* at 46-47.) Finally, the

21  Board expressed concern about Petitioner's demeanor, as he presented himself as a tightly strung,

22  highly stressed individual, and the Board questioned whether Petitioner had adequately dealt with

23  his stress and anger management issues. (*Id.* at 48-49.) The Board commended Petitioner for his

24  positive work reports and noted that he had been disciplinary-free since 1998, but found that the

25  positive aspects of his behavior did not yet outweigh the negative, and denied parole for a period

26  of two years. (*Id.* at 45, 47.)

27     8.    Respondent admits that on October 31, 2006, Alameda County Superior Court denied

28  Petitioner's petition for writ of habeas corpus, in which he alleged the same general causes of

Ans. to OSC; Mem. of P. & A.                             *Dyson v. Curry*
                                                    C07-4955 MJJ

1   action as in the current petition, with the exception of the claim regarding violation of his plea

2   bargain. (Ex. F, Superior Court Petition and Denial.[2]) The court determined that "review of the

3   transcripts provided and documents pertaining to the January 20, 2006 hearing indicate that there

4   was no abuse of discretion by the Board." (*Id.* at 1.) The court found that "there was certainly

5   some evidence, including, but not limited to the committing offense, Petitioner's limited

6   programming while in custody, Petitioner's insufficient participation in self help and therapy

7   programs, Petitioner's lack of alternative parole plans, Petitioner's limited viable job skills

8   necessary to secure employment once released and the [B]oard's impression that Petitioner is in

9   need of additional one on one counseling to enable him to deal with stress and pressure." (*Id.*)

10  The court concluded that "nothing in the record . . . indicates that the Board's decision was

11  arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated,"

12  and denied the petition accordingly. (*Id.*)

13      9.    Respondent admits that on December 6, 2006, the California Court of Appeal

14  summarily denied Petitioner's petition for writ of habeas corpus, in which he alleged the same

15  general causes of action as in the current petition, with the exception of the claim regarding

16  violation of his plea bargain. (Ex. G, Appellate Court Petition and Denial.)

17      10.   Respondent admits that on June 20, 2007, the California Supreme Court denied

18  Petitioner's petition for writ of habeas corpus, in which he alleged the same general causes of

19  action as in the current petition, with the exception of the claim regarding violation of his plea

20  bargain. (Ex. H, Supreme Court Petition and Denial.) Thus, Respondent admits that Petitioner

21  has exhausted his state court remedies as to the claims raised in the current petition, with the

22  exception of the claim regarding violation of his plea bargain. Respondent denies that Petitioner

23  has exhausted his claims to the extent that they are more broadly interpreted to encompass any

24  systematic issues beyond the review of his 2006 parole denial.

25      11.   Respondent denies that Petitioner has a federally protected liberty interest in parole;

26  _____

27      2. To cut down on volume and avoid repetition, Respondent has omitted the exhibits
    attached to Petitioner's state court petitions. These exhibits can be provided upon the Court's
28  request.

1    hence, Petitioner fails to assert a basis for federal jurisdiction. *Greenholtz v. Inmates of Neb.*

2    *Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987)

3    (no federal liberty interest without an expectation of early release); *In re Dannenberg*, 34 Cal. 4th

4    1061, 1087 (no expectation of early release in California); *Sandin v. Connor*, 515 U.S. 472, 484

5    (1995) (serving a contemplated sentence is not a significant or atypical hardship). Respondent

6    acknowledges that the Ninth Circuit came to the opposite conclusion in *Sass v. California Board*

7    *of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), but preserves the argument.

8        12.    Respondent denies that the state court denials of habeas corpus relief were contrary to,

9    or involved an unreasonable application of, clearly established United States Supreme Court law,

10    or that the denials were based on an unreasonable interpretation of facts in light of the evidence

11    presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and

12    Effective Death Penalty Act of 1996 (AEDPA).

13        13.    Respondent affirmatively alleges that Petitioner had an opportunity to present his case

14    to the Board, and that the Board provided him with a detailed explanation as to why he was

15    denied parole. Thus, Petitioner received all process due under *Greenholtz,* the only clearly

16    established Supreme Court law regarding the due process rights of inmates at parole

17    consideration hearings.

18        14.    Respondent affirmatively alleges that the Board conducted an individualized

19    assessment of Petitioner's parole suitability and considered all relevant and reliable evidence

20    before it. Respondent denies that the Board relied on illegal evidence to deny parole.

21        15.    Respondent denies that this Court must review Petitioner's parole denial under the

22    some-evidence standard. In *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006), the

23    United States Supreme Court emphasized that under AEDPA, only Supreme Court holdings

24    regarding the specific issue presented may be used to overturn valid state court decisions. As no

25    clearly established Supreme Court law provides that a parole denial must be supported by some

26    evidence, this Court need not review the current matter under the some-evidence standard.

27        16.    Respondent affirmatively alleges that if the some-evidence standard does apply to the

28    review of parole denials, the proper standard is that found in *Superintendent v. Hill*, 472 U.S.

Ans. to OSC; Mem. of P. & A.

*Dyson v. Curry*
C07-4955 MJJ

1  445, 455 (1985), which requires that only a "modicum of evidence" support the Board's decision

2  to deny parole. Respondent affirmatively alleges that under this standard, some evidence

3  supports the Board's parole denial.

4      17. Respondent denies that this Court must make an independent determination of whether

5  Petitioner currently poses an unreasonable risk of danger to society in order to uphold the state

6  court decisions denying parole.

7      18. Respondent denies that the Board relied on immutable factors to deny parole.

8  Respondent affirmatively alleges that the Board properly considered the gravity of Petitioner's

9  commitment offense, as required under California Penal Code section 3041(b) and California

10  Code of Regulations title 15, sections 2402(b), (c)(1)-(2). Respondent further affirmatively

11  alleges that federal due process does not preclude the Board from relying on static factors to deny

12  parole. *Sass*, 461 F.3d at 1129.

13      19. Respondent denies that the Board has a no-parole policy. Respondent affirmatively

14  alleges that Petitioner fails to provide any evidence that his parole denial is the result of such a

15  policy.

16      20. Respondent denies that the Board violated Petitioner's due process rights by denying

17  parole at his 2006 hearing.

18      21. Respondent admits that Petitioner's claims are timely under 28 U.S.C. § 2244(d)(1),

19  and that the petition is not barred by the non-retroactivity doctrine.

20      22. Respondent denies that an evidentiary hearing is necessary in this matter.

21      23. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

22  for habeas corpus relief.

23      24. Except as expressly admitted above, Respondent denies, generally and specifically,

24  each allegation of the Petition, and specifically denies that Petitioner's administrative, statutory,

25  or constitutional rights have been violated in any way.

26      Accordingly, Respondent respectfully requests that the petition for writ of habeas corpus be

27  denied.

28  / / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.

**THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

"Clearly established federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to established federal law if "the state court applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v. Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks omitted). A state court decision is an unreasonable application of clearly established law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. It is not enough that the state court applies the law erroneously or incorrectly; rather, the application must be objectively unreasonable. *Id.* at 75-76.

In order to find that a state court decision involved an unreasonable determination of the facts, the reviewing court must find that the decision was "objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340

1  (2003).  State court factual determinations are assumed to be correct, and a petitioner bears the

2  burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

3  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

4      When, as here, the California Supreme Court denies a petition for review without

5  comment, the federal court will look to the last reasoned decision as the basis for the state court's

6  judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the last reasoned

7  decision is the Alameda Superior Court's October 31, 2006 decision denying habeas relief.  (Ex.

8  F.)  As this decision is neither contrary to, or an unreasonable application of, clearly established

9  federal law, nor based on an unreasonable interpretation of the facts, Petitioner's claim for

10  habeas relief must be denied.

11      **A.    The State Superior Court Decision Was Not Contrary to or an Unreasonable
        Interpretation of Clearly Established Federal Law.**

12

13      The first standard under AEDPA is that a state court habeas decision must not be contrary

14  to, or an unreasonable interpretation of, clearly established federal law.  Here, Petitioner received

15  all process due under *Greenholtz*, the only clearly established federal law regarding the due

16  process rights of inmates at a parole consideration hearing.  Furthermore, clearly established

17  federal law does not require that the Board's decision be supported by some evidence; however,

18  even if it did, the Board's decision is supported by some evidence per the standard set forth in

19  *Hill*.  Finally, due process does not preclude the Board from relying, in part, on the factors of the

20  commitment offense to deny parole.  As such, the state court decisions denying habeas relief

21  were not contrary to or an unreasonable interpretation of clearly established federal law, and the

22  petition must be denied.

23      **1.    Petitioner received all process due under the only United States Supreme
        Court law addressing due process in the parole context.**

24

25      In *Greenholtz*, the United States Supreme Court established the due process protections

26  required in a state parole system.  The Court held that the only process due at a parole

27  consideration hearing is an opportunity for the inmate to present his case, and if parole is denied,

28  an explanation for the denial.  *Greenholtz*, 442 U.S. at 16.  Petitioner received both of these

Ans. to OSC; Mem. of P. & A.                                                    *Dyson v. Curry*
                                                                                C07-4955 MJJ

1   protections in his 2006 hearing. First, Petitioner had the opportunity to fully present his case to

2   the Board. Although he refused to discuss his commitment offense, he told the Board about his

3   in-prison activities, his job, and his self-help activities. (Ex. B at 3, 8-15.) The Board examined

4   Petitioner's psychological evaluation, and Petitioner discussed how his years in prison had

5   changed his way of thinking. (*Id.* at 15-18.) Petitioner also spoke of his desire to resume work

6   in the aviation field, and to talk with young people about crime in the community. (*Id.* at 20-21.)

7   Petitioner then discussed his parole plans and presented the Board with his letters of support. (*Id.*

8   at 22-32.) Finally, both Petitioner and his attorney had the opportunity to make a closing

9   statement, detailing the reasons why Petitioner should be found suitable for parole. (*Id.* at 38-

10   43.)

11       When the Board reconvened after a short recess, it provided Petitioner with a thorough

12   explanation as to why he was denied parole. (Ex. B at 44-50.) The Board based its decision on

13   the callous nature of the commitment offense, noting its dispassionate nature and trivial motive,

14   as well as Petitioner's failure to sufficiently participate in vocational and self-help activities.

15   (*Id.*) The Board also expressed concern at Petitioner's presentation, as he appeared to be very

16   stressed and uptight. (*Id.* at 48.) The Board commended Petitioner for his good work reports and

17   his disciplinary-free behavior, but found that the positive aspects of his behavior did not

18   outweigh the factors indicating parole unsuitability. (*Id.* at 44-45.)

19       Thus, because Petitioner received an opportunity to present his case and an explanation as

20   to why the Board denied him parole—and does not claim otherwise—he received all process due

21   under *Greenholtz*, the only clearly established Supreme Court law regarding due process at

22   parole consideration hearings. Accordingly, the state court decisions upholding the Board's

23   parole denial are not contrary to, or an unreasonable application of, clearly established federal

24   law.

25   / / /

26   / / /

27   / / /

28

2.    **The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.**

Petitioner states that this Court must determine whether some evidence supports the Board's decision to deny parole. However, the some-evidence standard is not the proper standard of federal judicial review. In *Greenholtz*, the Supreme Court specifically rejected the idea that a parole board must specify particular evidence in the inmate's file or at his interview to support its decision, as that would transform the parole process into an adversarial proceeding and equate the denial of parole to a guilty verdict. Thus, as a matter of clearly established Supreme Court law, a challenge to a parole decision will fail if the inmate has received the protections required under *Greenholtz*.[3/]

The Ninth Circuit, however, has erroneously determined that clearly established federal law requires that a parole decision be supported by some evidence. *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002). This standard stems from the decision in *Hill*, in which the United States Supreme Court determined that some evidence must support the decision of a prison disciplinary board to revoke good time credits. 472 U.S. at 455. In *Jancsek*, *McQuillion*, and subsequent cases, the Ninth Circuit held that the some-evidence standard applies not only in the disciplinary context, but the parole context as well. *Id.* However, because these holdings are not clearly established federal law under AEDPA standards, they do not apply in federal habeas proceedings which challenge parole denials.

In *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006), the United States Supreme Court reiterated that for AEDPA purposes, "clearly established federal law" refers only to the holdings of the Supreme Court on the specific issue presented. In *Musladin*, the Ninth Circuit held that under clearly established federal law, courtroom spectators who wore buttons

---

3. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being considered for release on parole includes an opportunity to be heard and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 2384, 2397 (2005).

Ans. to OSC; Mem. of P. & A.

*Dyson v. Curry*
C07-4955 MJJ

10

1    depicting the victim of a murder inherently prejudiced the murder defendant and denied him a

2    fair trial. *Id.* at 652. In doing so, the court determined that the prejudice tests used by the

3    Supreme Court in two similar but factually distinct cases constituted clearly established federal

4    law for the purposes of AEDPA. *Id.* The Supreme Court, however, reversed the Ninth Circuit's

5    decision upon review, holding that the highest court had "never addressed a claim that private-

6    actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial."

7    *Id.* at 653. Hence, the *Musladin* court made it clear that circuit courts may not import a federal

8    standard used for one set of circumstances into a different set of circumstances under the guise of

9    "clearly established federal law."

10        The Ninth Circuit has affirmed this principle in a number of recent cases. For instance, in

11   *Foote v. Del Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007), the court affirmed the district court's

12   denial of a petition alleging ineffective assistance of appellate counsel based on an alleged

13   conflict of interest because no Supreme Court case has held that such an irreconcilable conflict

14   violates the Sixth Amendment. Similarly, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the

15   court upheld a state court's decision finding that *Wainwright v. Greenfield*, 474 U.S. 284 (1986)

16   did not apply to a state court competency hearing on the ground that the Supreme Court had not

17   held yet applied *Wainwright* in this manner. *Id.* at 718, 727. Finally, *Crater v. Galaza*, 491 F.3d

18   1119, 1126, n. 8 (9th Cir. 2007), cited *Musladin* in acknowledging that decisions by courts other

19   than the Supreme Court are "non-dispositive" under AEDPA standards.

20        The *Jancsek* and *McQuillion* courts, however, did exactly what the *Musladin* court

21   warned against—they took the some-evidence standard from the prison disciplinary context and

22   applied it to an entirely different situation. Although both prison disciplinary hearings and parole

23   consideration decisions affect the duration of an inmate's confinement, the two situations are not

24   identical. Specifically, prison disciplinary hearings involve a finding of guilt, meaning that the

25   process due in disciplinary hearings is greater than that required in parole hearings. *Greenholtz*,

26   442 U.S. at 15-16. Thus, the *Jancsek* and *McQuillion* courts erred in determining that the some-

27   evidence standard should apply in the parole hearing context, and subsequent courts have erred in

28   holding that this standard is clearly established federal law for the purposes of AEDPA. *See*

Ans. to OSC; Mem. of P. & A.                                        *Dyson v. Curry*
                                                                    C07-4955 MJJ

11

1  *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007); *Sass*, 461 F.3d 1123; *Biggs v. Terhune*, 334 F.3d

2  910 (9th Cir. 2003).

3          Any argument that due process requires a less deferential standard of review is without

4  merit.  Neither the some-evidence standard nor any more stringent standard is necessary to

5  protect Petitioner's due process rights, as three California courts have already evaluated the

6  substantive merits of his claims.  (Exs. F, G, H.)  Therefore, the absence of substantive review

7  under AEDPA does not diminish Petitioner's due process rights—it merely defers to the state

8  court's evaluation of those rights, consistent with AEDPA's stated purpose of "further[ing]

9  comity, finality, and federalism." *Miller-El v. Cockrell,* 573 U.S. 322, 337 (2003).  Thus, neither

10 the some-evidence standard of review nor any higher standard is necessary at the federal level to

11 protect Petitioner's substantive due process rights.

12          *Greenholtz* is the only United States Supreme Court authority describing the process due

13 at a parole consideration hearing.  As such, Petitioner is entitled to only those protections

14 provided in *Greenholtz*.  Because he received these protections, the state court decisions

15 upholding his parole denial are not contrary to clearly established federal law.

16          **3.      Even if the some-evidence standard was clearly established federal
                       law, the standard was correctly applied by the state courts.**

17

18          Even if the some-evidence standard is clearly established federal law for AEDPA

19 purposes, Petitioner's claim would nonetheless fail because the state court correctly applied the

20 standard.  The some-evidence standard "does not require examination of the entire record,

21 independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is

22 satisfied if there is "any evidence in the record that could support the conclusion reached by the

23 [B]oard." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that *"Hill's* some

24 evidence standard is minimal").

25          The evidence used by the Board to deny parole was the egregious nature of Petitioner's

26 crime, his failure to participate in self-help or vocational training, his lack of viable parole plans,

27 and his manner during the hearing.  (Ex. B, 44-50.)  After getting into a minor traffic collision

28 with the victim, and while a police officer was present and investigating the collision, Petitioner

Ans. to OSC; Mem. of P. & A.                                                              *Dyson v. Curry*
                                                                                          C07-4955 MJJ

1   returned to his car, obtained a gun, approached the victim's car, and without provocation, shot

2   the defenseless victim through the driver's side window. (Ex. C at 1.)  Although he claimed the

3   murder was the result of an inability to deal with stress, he has not participated in any self-help

4   activities since 2002, and the Board noted with concern that he continued to present an uptight,

5   tightly-strung demeanor. (Ex. B at 48; Ex. D at 2.)  In addition, Petitioner failed to provide the

6   Board with any job leads or offers, had not pursued vocational training since 1987, and lacked

7   any verified housing arrangements. (Ex. B at 22-29, 32.)  This led the state court to find that

8   "there was certainly some evidence" to support the Board's parole denial.  Thus, to the extent

9   that the some-evidence test in *Superintendent v. Hill* is clearly established federal law, it was

10  reasonably applied by the state courts, and Petitioner's claim to the contrary must be denied.

11          **4.    The Board may rely on static factors to deny parole.**

12          Petitioner also argues that due process precludes the Board from relying solely on his

13  commitment offense to deny parole.  This argument fails for a number of reasons.  First, the

14  Board did not rely solely on the facts of the commitment crime to deny parole; rather, the Board

15  based its decision on Petitioner's demeanor, as well as his failure to upgrade vocationally, pursue

16  self-help, or obtain reasonable parole plans. (Ex. B at 44-50.)  All of these are dynamic factors

17  under Petitioner's control.  Second, no clearly established Supreme Court law provides that the

18  Board cannot base a parole denial on the factors of an inmate's commitment offense.  Third,

19  California's parole provisions explicitly state that parole may be denied based on the egregious

20  nature of the crime.  For instance, California Penal Code section 3401 states that Board "shall set

21  a release date unless it determines that the gravity of the current convicted offense or offenses, or

22  the timing and gravity of current or past convicted offense or offenses, is such that consideration

23  of the public safety requires a more lengthy period of incarceration."  Similarly, California Code

24  of Regulations title 15, section 2402(c)(1), provides that a crime committed "in an especially

25  heinous, atrocious, or cruel manner" is a factor tending to indicate parole unsuitability.  Finally,

26  the California Supreme Court held in *Dannenberg* that the Board may rely solely on the

27  circumstances of the commitment offense to deny parole. 34 Cal. 4th at 1094.  Thus, under both

28  state law and clearly established federal law, the Board properly based its decision, in part, on

Ans. to OSC; Mem. of P. & A.                                                      *Dyson v. Curry*
                                                                                 C07-4955 MJJ

13

1    Petitioner's commitment offense.

2           The Ninth Circuit's holding in *Biggs* does not compel a different result.  In *Biggs*, the

3    Ninth Circuit stated that the Board's continuing reliance on an unchanging factor to deny parole

4    "could result in a due process violation." *Id.* at 917.  However, the *Biggs* court did not

5    definitively indicate that reliance on an unchanging factor necessarily violates due process, only

6    that it possibly could.  Indeed, the court praised Biggs for being "a model inmate," and found that

7    the record was "replete with the gains Biggs has made," including a master's degree in business

8    administration. *Id.* at 912.  Nonetheless, the court denied habeas relief because the Board's

9    decision to deny parole–which relied solely on the commitment offense–was supported by some

10   evidence. *Id.* at 917.

11          Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

12   established federal law sufficient to overturn a state court decision under AEDPA standards.  The

13   Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder

14   AEDPA, it is not our function to speculate about how future parole hearings could proceed."

15   *Sass*, 461 F.3d at 1129.  The *Sass* court then rejected the argument that the Board's reliance on

16   "immutable behavioral evidence" to deny parole violated federal due process. *Id.*

17          The Ninth Circuit most recently addressed this issue in *Irons*.  In overturning a district

18   court grant of habeas corpus, the Ninth Circuit held that despite substantial evidence of the

19   inmate-petitioner's rehabilitation, the Board acted properly and did not abuse its discretion by

20   relying on the circumstances of the commitment offense to deny parole. *Irons*, 505 F.3d at 852-

21   853.

22          Thus, the dicta from *Biggs* and its progeny do not prelude the Board from using

23   circumstances of the commitment offense to deny parole, nor may this dicta be used to overturn a

24   valid state court decision.  Accordingly, Petitioner fails to prove that the state court decision

25   denying parole is contrary to or an unreasonable application of clearly established federal law,

26   and the petition must be denied.

27   / / /

28   / / /

1    **B.    The State Court Decision Upholding the Board's Parole Denial Was Based On a Reasonable Interpretation of the Facts.**

2

3         The second standard under AEDPA is that a state court habeas decision must be based on

4    a reasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

5    2254(d)(2).  Petitioner bears the burden of proving that the state court's factual determinations

6    were objectively unreasonable.  28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270

7    (9th Cir. 2005).  Thus, in order to prevail on this claim, Petitioner would need to prove that it was

8    objectively unreasonable for the state courts to conclude that the Board acted in accordance with

9    due process and that some evidence supported the factual basis of the Board's parole denial.

10   Petitioner fails to meet this burden, as some evidence in the record supports the Board's finding;

11   furthermore, he does not provide any evidence to show that the Board's determination of parole

12   unsuitability violated federal due process.  Petitioner may disagree with the Board's analysis, but

13   that is not sufficient to prove that the state court's decision was objectively unreasonable.  Thus,

14   Petitioner fails to prove that the state court's factual determinations were unreasonable under

15   AEDPA standards, and the petition must be denied.

16                                        **II.**

17       **PETITIONER FAILS TO PROVE THAT THE BOARD IS SYSTEMATICALLY BIASED.**

18

19        Finally, Petitioner argues that his parole denial is the result of the Board's systematic bias

20   against granting parole to life term inmates.  The only support Petitioner offers for this claim is a

21   set of unverified statistics showing that the Board denies parole to a large number of prisoners.

22   Petitioner has the burden of proving his allegations in a habeas corpus proceeding.  *Johnson v.*

23   *Zerbst*, 304 U.S. 458, 468-69 (1938).  His generalized grievance against an alleged and

24   unsubstantiated "anti-parole" policy is not sufficient evidence to meet this burden.  Furthermore,

25   Petitioner's attorney expressly denied any objections to the members of the Board panel.  (Ex. B

26   at 3.)  Accordingly, Petitioner fails to provide sufficient evidence to support his claim of bias,

27   and the petition must be denied.

28   ///

Ans. to OSC; Mem. of P. & A.                                        *Dyson v. Curry*
                                                                    C07-4955 MJJ

## CONCLUSION

Petitioner's disagreement with the Board's decision is not sufficient to overturn three valid state court decisions denying habeas relief. Rather, in order for his claim to succeed, he must prove that the state court holdings were contrary to, or an unreasonable application of, clearly established federal law, or that the decisions were based on an unreasonable determination of the facts. Petitioner fails to make such a showing. First, he received all process due under *Greenholtz*, the only clearly established federal law in the parole hearing context. Second, the some evidence standard does not apply to Petitioner's case; however, even if it did, the Board's decision is supported by some evidence of parole unsuitability. Finally, Petitioner does not offer sufficient proof that the Board's decision was based on a systematic bias against granting parole. Accordingly, the petition for writ of habeas corpus must be denied.

Dated: January 22, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMBER N. WIPFLER
Deputy Attorney General
Attorneys for Respondent Warden B. Curry

40206959.wpd
SF2007200882

Ans. to OSC; Mem. of P. & A.

*Dyson v. Curry*
C07-4955 MJJ

16

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:  **Dyson v. Curry**
No.:        **C07-4955 MJJ**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>January 22, 2008,</u> I served the following documents:

ANSWER TO ORDER TO SHOW CAUSE;
MEMORANDUM OF POINTS AND AUTHORITIES
(W/EXHIIBITS A-H)

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Harold D. Dyson
C-80683
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960-0686
> *In Pro Se*
> *C-80683*

## Electronic Mail Notice List

I have caused the above-mentioned document to be electronically served on the following person, who is currently on the list to receive e-mail notices for this case:

**NONE**

1

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing):

Harold D. Dyson
C-80683
Correctional Training Facility
P.O. Box 686
Soledad, CA  93960-0686
　　　　*In Pro Se*
　　　　*C-80683*


I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 22, 2008, at San Francisco, California.

| | |
|---|---|
| S. Redd | *(signature)* |
| Declarant | Signature |

SF2007200882
40208839.wpd

2