1  HAROLD D, DYSON
   C-80683 Z-341-L
2  P.O. BOX 689
   SOLEDAD, CALIF. 93960-0689
3

4  petitioner in pro per

5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10

11  HAROLD D, DYSON,                 CASE NUMBER C07-4955  mjj (PR)
                                     TRAVERSE TO RETURN TO PETITION
12                                   FOR WRIT OF HABEAS CORPUS,AND
                                     MEMORANDUM OF POINTS AND
13          -V-                      AUTHORITIES IN SUPPORT OF
                                     OPPOSITION TO MOTION TO DISMIS
14
                                     28 U.S.C. 2254
15  BEN CURRY,WARDEN,et al



16

17

18      PETETIONER, harold d, dyson, makes this traverse to respondent's return

19  to his petition for writ of habeas corpus and further alleges as follows:

20              I. of respohdent return is untrue

21              1. paragraph number one of the return is untrue

22              2. paragraph number two of the return is untrue

23              3. paragraph number three of the return is untrue

24              4. paragraph number four of the return is untrue

25              B. of respondent return is also untrue

26              II. of respondent's return is also untrue

27

28                          1.

## TABLE OF AUTHORITIES                                    PAGE

1   picard v, conner,404 u.s. 270,275,92 s.ct. 509,30 1. ed 2d 438 (1971)    2.

2   rose v, lundy,455 u.s. 509 102 s.ct. 1198,71.1. ed 379 (1982)    2.

3   gutierez v, griggs, 969 f. 2d 1195,1102 (9th cir,1983)    2.

4   larche v, simons, 53 f. 3d 1068,1071 (9th cir,1995)    2.

5   ducan v, henry, 513 u.s. 364,115 s,ct. 887,130.1. ed 265 (1995)    2.

6   grey v, netherland, 518 u.s. 152,163.1. ed 457 (1996)116,s.ct.2074,135.    2.

7   havala v, wood, 195 f. ed 1098,1106 (9th cir,2003)    3.

8   robinson v, ignacio, 360 f. 3d 1044,1057 (9th cir,2004)    3.

9   durchame,200 f. ed.597,600 (9th cir, 2000)    3.

10   biggs, terhune, 334 f. ed 910    3.

11   daniels v, williams, 474 u.s. 327,331 (1986)    6.

12   biggs v, terhune 334 f, 3d 910, 914, (9th cir,2003)    6.

13   in re deluna, 126, cal,app. 4th 585,591,24 cal.rptr.3d 643,647 (2005)    6.

14   daniels, 476 u.s. at 331    6.

15   in re sandra davis lawrence, b190874 cal.rptr.3d.ca; app.2 dist.(2007)    7.

16   biggs v, terhune,supra.334 f. 3d at p,912.    7.

17   irons v, warden /solano,3.d. cal.(2005) 358 f. supp.2d 936.939.    8.

18   hayward v, marshall, cv-05-07239-gaf.(2007)    9.

19   dannenberg,"2" supra,34 cal.4th at p,1098    9.

20   in re lee,143 cal,app.4th 1400,1408. (2006)    9.

21   in re scott,133 cal,app.4th 573.595. (2005)    9.

22   in re elkins,supra.144 cal.app.4th at 480-493.(2006)    9.

23   in re jameison,71194 s.c. (2007)    11.

24           **UNITED STATES CONSITITUTION**

25   xiv amendment  fifth an fourteenth amendments,
          **UNITED STATES CODE**

26   28 u.s.c. 2254

27   28 u.s.c. 2254 (b) (1.) (a.)
          **CALIFORNIA CONSITITUTION**

28   article 1. SECTION 15.

TABLE OF AUTHORITIES
-CONTINUED-

1

2                                 **PENAL CODE**

3   penal code 1484

4   penal code 3041 (a)

5   penal code 3041 (b)

6

7                      **CALIFORNIA  CODE OF REGULATIONS**

8   title 15,2401

9   title 15,2402

10

                            **EXHIBITS ENCLOSED.**
11

12  exhibit "a" CONTAINEDS,parole plans/supports letters/letters from three organ-

13  izations offering a place for petitioner to live and offering jobs/training.

14  nine pages of "self-helps" CRONOS.

15  EXHIBIT "B" CONTAINEDS,'board of parole hearings "memorandum"/cdc form128c-2.

16  "recommendation for adaptive support. cdc form 128 c."mental health placement"

17  EXHIBIT "C" CONTAINEDS "STATISTICAL DATA" BPT RECORDS FROM 1994 thru 2007.

18  exhibit "D" CONTAINEDS,department of corrections,letter,from "chief, program

19  support unit.MR, D.L. LAMOTTA.

20

21

22

23

24  ///

25  ///

26  ///

27

28

**(I) OF RESPONDENT'S RETURN ALLEGES THAT PETITIONER'S CLAIM WAS NOT CONTRARY TO AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

## A. EXHAUSTION OF CLAIMS IN THE STATE COURT

it has long been settled that a state prisoner must normally exhaust available state court remedies before a federal court will entertain his petition for writ of habeas corpus. picard v. conner, 404 u.s. 270,275,92 s,ct. 509,30 1. ed.2d 438 (1971) . the exhaustion requirment has been codfied at 28 u.s.c. (B) (1) (A). a district court must dismiss a petition for writ of habeas corpus that includes claims not exhausted in state court. rose v. lundy, 455 u.s. 509 102 s.ct 1198,71.1. ed 2d 379 (1982).

the exhaustion requirment "reflects a policy of federal-state comity, (citations) an accomodation of our federal system designed to give the state an initial opportunity to pass upon and correct alleged violations of prisoner's federal rights," picard, 404 u.s. at 275 (citations omitted.) it is the petitioner's burden to demonstrate exhaustion. gutierez v, griggs, 969 f. 2d 1195,1107 (9th cir,1983). for exhaustion purposes, the federal claim must first be "fairly presented to the state court." picard, 404 u.s. at 275. this required the petitioner to present his petition to the highest court of the state, (which he did) larche v, simons, 53 f. 3d 1068,1071-1072 (9th cir,-1995). the petitioner must recite both the federal and factual consititutional bases for his claim, (which petitioner did). ducan v, henry, 513 u.s. 364,115 s,ct. 887,130,1. ed 265 (1995);  gray v, netherland, 518 u.s. 152,163, 1, ed 457 (1996). 116 s,ct. 2074,135 1. ed. .

2.

1    specifically u.s.c.  2254 (B) (1) (A) requires a federal habeas petitio-

2    ner to have exhausted his claim on the state court before coming to federal

3    court.  exhaustions is determind on a claim by claim basis.  see e.g. hivala-

4    v, wood, 195 f. ed 1098 1106 (9th cir,2003), ("a habeas petitioner must give

5    the state court the first opportunity to review any claim of federal constit-

6    utional error before seeking federal habeas review of that claim.") although

7    the statutory formulation restricts federal law to supreme court precedent,

8    we have previously observed that "ninth circuit precedent may be persuasive

9    authority for purposes of determining whether a particular state court deci-

10   sion is an unreasonable application of supreme court law, and may also help

11   what law is clearly established.  robinson v, ignacio, 360 f. 3d 1044, 1057

12   (9th cir,2004) (citing durchame, 200 f. ed. 597,600 (9th cir. 2000).

13

14       ### THE STATE COURT'S UNREASONABLE DETERMINATION OF THE FACTS.

15    in biggs, the ninth circuit indicated that a continue reliance on an un-

16   changing factor such as the circumstances of the offense could result in a

17   due process violations.  biggs was serving a sentence of twenty-five to life

18   following a 1985 first degree murder conviction.  in the case before the nin-

19   th circuit, biggs challenged the 1999 decision by the bpt for finding him un-

20   suitable for parole despite his record as a model prisoner. 334 f. 3d at 913.

21   while the ninth circuit rejected several of the reason given by the board for

22   finding biggs unsuitable, it upheld three, (1.) petitioner's commitment off-

23   ense involved the murder of a witness; (2.) the murder was carried out in a

24   manner exhibiting a callous disregard for the life and suffering of another;

25   (3.) petitioner could not benfit from therapy. 334 f. at 913

26

27

28

1    the ninth circuit cautioned the bpt regarding it's continued reliance

2   on the gravity of the offense and petitioner's conduct prior to the offense:

3

4           as in the present instance, the parole board's
            sole supported reliance on the gravity of the
5           offense and conduct prior to imprisonment to
            to justify denial of parole can be intitially
6           justified as fullfilling the requirments set
            forth by state law. over-time, however, should
7           biggs continue to demonstrate exemplary behavior
            and evidence of rehabitition, denying him parole
8           date simply because of the nature of his offense
            would raise serious questions involving his liberty
9           interest. 334 f. 3d at 916.

10    the ninth circuit stated that (A.) continued reliance in the future of

11   an unchanging factor, the circumstances of the offense and conduct prior to

12   imprisonment, runs contrary to the rehabilitate goals espoused by the prison

13   system and could result in a due process violation. "334 f. 3d at 917.

14    the state court in this petitioner's case (alameda county superior ct)

15   failed to consider the above mentioned violation of this petitioner in regards

16   to the bpt continueing use of the crime in petitioner case as basis for denial

17   of parole.

18    the state court (alameda county) also failed to reconize that petition-

19   er presented to the bpt at the (2006 hearing) over (12) twelve years of self-

20   help crono documenting various self-help programs that petitioner has partic-

21   ipated in up to (2007). also presented to the (2006) bpt panel, were three

22   different letters offering a place to petitioner live and offering job train-

23   ing, they were acompanied by letters from petitioner's family members offering

24   a place to for petitioner to live as well offers of job's at petitioner's

25   brothers place of business.  also, petitioner presented the panel his parole-

26   plans-resume. (see exhibit "A").which indicated's that petitioner has viable

27   job skills that can be put to use upon his release. also respondents assertion

28   that petitioner is in need of more (therapy),(see 'psychologist's cronos,EX"B"

4.

1     <u>petitioners</u> submits that there has never been a <u>regulations</u> requiring

2 term-to life inmates to submits to <u>end-less evaluations</u> because a board commi-

3 ssoner may <u>disagreed</u> with an inmates <u>current psychologist evauation</u> reached in

4 his/her most recient <u>evaluation.</u>  also, respondent's pointing out to page

5 number "48" of petitioners last board hearing transcript, <u>where</u> one of the

6 commissoner is (quoted) saying," (petitioner, seems to be <u>uptight</u>.)  what is

7 not pointed out by respondet is at the very next two lines on the same page

8 at lines "22-23, where the same commissoner goes on to say  (quote) ("that's

9 not surprising in an institution"). respondent use this as an example that

10 petitioner is in need of therapy.

11     petitioner would like to submit to this court a "<u>memorandum</u>" from the

12 then (january 26,2006) <u>excutive director, board of parole hearing</u>) by the

13 name of  <u>dennis kenneally</u>. which states in part that "<u>inmates who are not part</u>

14 <u>of the  MHSD (mental health savices delivery system</u>) will have intial psycho-

15 logist reports generated upon entry into the department of correction and re-

16 habititation."  this petitioner came into the department of corrections back

17 january of 1984, <u>petitioners</u> submits, that he is not in that category (MHSD).

18 (see  exhibit "B") the memorandum also further states that," psychologist

19 reports for subsequent lifer hearings for <u>non MHSD inmates will not be genera-</u>

20 <u>ted thereafter.</u> petitioner also submits to the court a "<u>memorandum</u>" from a mr.

21 d.l. lamotta."<u>chief,program support unit</u>" parole and community services div".
(see exhibit "D")

22     petitioners also submits that his last and most recient psychologist

23 reports have been <u>supportive of release</u>.  again the lower state court (alame-

24 da county)superior court) failed to take petitioners psychologist report in

25 to considerations.

26     the state courts decision was <u>contrary to an unreasonable interpretat-</u>

27 <u>ion of "clearly established federal law."</u> <u>biggs</u> 334 f.3d at 917.

28

1    <u>clearly</u> established supreme court precedents establish that petitioner

2    has a right to be free from arbitrary state action. that right is the fundam-

3    ental priciple of due process.  for example, the supreme court discussed this

4    basic component of due process - to be - free arbitrary state action - <u>in re</u>

5    <u>daniels v, williams</u>,474 u.s 327,331 (1986) in discussing the protection of due

6    process clause of the fourteenth amendment accords, the court explained in

7    <u>biggs</u> the "traditional and common-sense notion" of due precess was that it

8    "protected the indiviual against arbitrary state action." <u>daniels,</u> 476 u.s. at

9    331.

10    the boards continued reliance on the unchanging facts about petitioners

11    conduct at the time of the killing used to trump all other favorable evidence

12    that is before the board that petitioner no longer poses an unreasonable dan-

13    ger to the public if released demonstrates the arbitrariness of the state

14    agency's action.

15    the ninth circuit has held that california's parole scheme give rise to

16    cognizable liberty interest in release on parole. <u>biggs v, terhune,</u> 334 f.3d

17    910,914 (9th cir.2003).  it is difficult to conceive of words that mirror the

18    requirements of <u>allen</u> mandatory-act-in light-of-satisfied-factual-predicates

19    more than the emphasized words of <u>rosenkrantz</u> indeed,  <u>allen</u> and <u>rosenkrantz</u>

20    use the same terminology, i.e. "presumption" of release and "expection" of

21    release.  <u>these are words of liberty interest creation.</u> it is not material

22    that great discretion is vested whithin the adminstrative agency granting

23    parole. <u>allen</u> supra. see also the post <u>dannenberg</u> case of <u>in re deluna,</u> 126,

24    cal.app. 4th 585,591,24 cal.rptr.3d 643,647 (2005).

25

26

27

28

**6.**

penal code section 3041,subdivision (b) requires
the board to "set a release date unless it deter-
mines that the gravity of the current or past con-
victed offense or offenses, is such that consider-
ation of public safety requires a more lengthy
period of incarceration for this indiviual, and
that a parole date, therefore, cannot be fixed at
this meeting."this statute creates a conditional
liberty interest for a prospective parolee."
(c.f. rosenkrantz, supra.

## THE SOME EVIDENCE STANDARD

## IN THE CASE OF

in re: SANDRA DAVIS LAWRENCE, on habeas corpus.

B190874 CAL.Rptr.3d. ca; app.2 dist.2007

petitioner would like to direct the court's attention to the following
as to that courts decision in regards to the some-evidence standards.page (15)

when evaluating whether a commitment offense
alone can support such a finding, the supreme
court has supplied some further guidance,focused
largely on the nature of that offense. in rosenkrantz,
it explained, "a denial of parole based upon the
nature of the offense alone might rise to the level
of a due process violation-for example where no
circumstances of the offense reasonably could be
more aggravated or violent than the minimum
necessary to sustain a conviction for that offense...
therefore, a life term offense or any other offense
underlying an indeterminate sentence must be 'particulary
egregious' to justifty the denial of parole date."

petitioner would like to further direct the courts attention to p,(16)

31.BIGGS V, TERHUNE,SUPRA.334 F.3D atPAGE 912. is discussed further in

reference to the above cited case of in re lawrence.

7.

several federal district courts in decision to be
discussed later in this opinion have considered
parole denials at later stages of prisoners incar-
ceration and applied the standard of review announced
in biggs. in doing so, those courts frequently have
found the nature of the commitment offense alone,
essentially no matter how bad the circumstances of
that offense, to be less than "some evidence" just-
ifying a denial of parole to the prisoner involved,
at lest after 15 or more years of incarceration.

petitioner further direct the courts attention to page (20.) of the

aformentioned case.

### 44.in irons v, warden of california state prison-solano
(e.d. cal.2005) 358 f. supp.2d 936.939

a district court judge in the eastern district (J,KARLTON) found a 17-year-

old commitment offense insufficient as "some evidence" of the prisoner's

continued dangerousness, even though it was coupled with some other pre-convi-

ction criminality. similar to lawrence, irons had both shot and stabbed the

victim.(ID. at pages 940-941.)

it further reads on as follows:

the board's denial was based on a finding irons committed the murder in a cal-

culated manner, demonstrated a callous disregard for human life, and for tri-

vial motive.  furthermore, at the time of the crime irons was a drug user.

(ID.at page 944.)  the district court found these factors failed to supply

"some evidence" of present dangerousness under the standard of review declared

in biggs, but made a somewhat different point than the judge in rosenkrantz.

(I)mportant...in assessing any due process violation
is the fact that continous reliance on unchanging
circumstances transforms an offense for which cal-
ifornia law provides eligbility for parole into a
de facto life imprisonment without the possibility
of parole.

8.

petitioner further direct's the courts attention on to page (27.) of
the aforementioned case of <u>in re lawrence</u>.

> in recent years, several california courts have app-
> lied the state constitution's due process "some -
> evidence" standard as declared by the california sup-
> reme court in <u>rosenkrantz</u> and found a commitment mur-
> der insufficient to sustain a denial of parole many
> years or decades later. meanwhile, several federal
> district courts have involked the federal due process
> "some evidence" standard set forth in <u>biggs v, terhune</u>
> to reverse parole denials, again when based on "old
> commitment offenses.

## APPEALS COURT HOLDS THAT THE "SOME EVIDENCE" TEST APPLIES TO

## "CURRENT PAROLE RISK, AND NOT JUST COMMITMENT OFFENSE FACTS..."

on january 3,2008, the united states court of appeals for the ninth
circuit <u>reinforced</u> its earlier holding in <u>biggs</u> that the commitment offense
facts cannot be employed indefintely to preclude the parole of a lifer inmate
(<u>hayward v, marshall</u>no.cv-05-07239-gaf(ct)(G,A,FEES.dist:judge:presiding.)
hayward who is otherwise suitable for parole and whose psychological evaluat-
ion determines no longer poses an unreasonable risk of danger to public safety
if paroled.

in vacating the governor's reversal of hayward's parole grant, the cou-
rt aligned the ninth circuit with the state court of appeals new decision in
<u>dannenberg-'2'</u>supra,34 cal.4th at page 1098. and its previous holding in,
inter alia,<u>in re lee</u> (2006) 143 cal,app.4th 1400,1408, italics added. <u>in re</u>
<u>scott</u>(2005)133 cal.app.4th 573.595, <u>in re elkins,</u>supra.144 cal.app.4th at 480-
493.

petitioner submits that these "cases", now including <u>hayward</u>, requires
a reviewing court to apply the some evidence test - not to the <u>reasons</u> dutifu-

1  lly recited by the parole board or governor for its "unsuitable for parole"

2  an unreasonable risk of danger" conclusion- but to the decision itself.

3  because the statute - penal code 3041 -which provides a lifers liberty intere-

4  st in parole, requires that parole "shall" be granted "unless" public safety

5  requires otherwise, unless the governor supports his "unreasonable risk" det-

6  ermination with some reliable evidence suggesting that the subject's parole

7  currently poses an unreasonable risk of danger to public safety ('all who mur-

8  der pose unreasonable risk at the time of the murder) the decision flunks the

9  "some-evidence test.

10

11      petitioner resubmits that all of respondent's assertions in respondents

12  arguments are false and not supported by facts,  petitioner submits, that he

13  is not a current risk to the public and that there is not a modicum of some-

14  evidence having an "idicia of relibility" to support the boards finding as re-

15  quired by the united states constitution, (5th),& (14th) amendments. the cal-

16  ifornia consitution, article "1".section "15".

17      in re: irons.479.F.3d 658.(2007). "the minimum term" refered to is the

18  minimum number of years to which petitioner had been sentenced at the time of

19  the challenged parole denials by the board.  "in the instant case" that would

20  be (25yrs)twenty five years.  the court ruled that "due process was not viol-

21  ated when prisoner were determined unsuitable for parole prior to the expira-

22  tion of their minimum term, refering to irons, biggs, and sass. petitioner is

23  now currently going-on his (24th) year.  and must conclude that he is in fact

24  suffering a continous ongoing due process violation of his uncontested "rights

25  petitioner must conclude that the board is not following the law and is in

26  fact arbitary and capricious in its act beyond the bounds of decency when they

27  continue to use the commitment offense to deny parole.

28

## THE BOARD IS SYSTEMATICALLY BIASED.

petitioner would like to direct the courts attention to the on-going case out of(santa clara county) in re; jameison,71194 s.c.(2007) althow that case is still pending in the state courts, it has significants where this petitioner proves that the board dose have a biasedness towards term to life inmates.  of the 9,750 inmates that were examined for that case by profeessor mohammad kafai, director of statiscs program at san francisco state university he testified that given that every inmate within the statistically significat samples had his or her crime labeled "particularly egregous" or "especially heinous" "atrocious or cruel" under section(2402) (c.) (1.).  he further stat-ed," it can be mathematically concluded that the same finding has been made for every inmate in the entire population of the 9,750". profeessor kafai al-so further testified that "(quote)"that statisticians never like to state unequivocally that something is proven to a 100% certainty.". he did indicate that the evidence he had thus far examined came as close to that conclusion as could be allowed.(p.10-11).

petitioner submit thru (EXHIBIT "C") statics of the board starting fr-om the year 1994 thru 2007).  respondent argument that this petitioner has failed to prove systematically biased just dose not hold up to the evidence presented in the in re jameison case. petitioner realleges that the board dose in fact have an on-going biasedness towards term to life inmates which this petitioner is member of that group of inmates. unequivocally the evidence can stand on its own.

11.

## CONCLUSION

the board's decision was arbitrary and capricious. the petitioner did not receive a fair hearing nor will he ever.

petitioner submits and contends that the finding of unsuitability was arbitrary and caprioious (due to the board carrying out it's political fun-ction of adhering to a biased-no-parole policy), due to the board's acting contrary to the intent and spirit of p.c. (3041) (b) and due to its refusal to adhere to aforementioned decisions and the controlling authorities.

the petitioner prays this court order him discharged and/or released, or at the very least, direct the board to issue a decision within (10) days granting parole,setting his term "uniformly" as mandated by the state legis-lature.

///
///
///

## DECALARATION OF

## HAROLD D, DYSON

I DECLARE THAT UNDER THE PENALTY OF PERJURY THE FOREGOING TO BE TRUE. THIS DECLARATION IS EXCUTED ON THIS THE 22nd DAY OF FEBRUARY 2008, HERE AT C.T.F. SOLEDAD, CALIF.

FEBRUARY 22 2008                                          MR, HAROLD D, DYSON

///
///
///

Exhibit A

# PAROLE PLAN

**NAME:** HAROLD D. DYSON

**ADDRESS:**

**TELEPHONE:**                                    **E-MAIL:**

**PAROLE AGENT APPOINTMENTS:** UNKNOWN AT THIS TIME

**RESIDENCE – Describe plan for living arrangements:** DELANCEY STREET FOUNDATION, 600 EMBARCADERO STREET, SAN FRANCISCO,(SEE ATTACHED LETTER) THE NORTHERN CALIFORNIA SERVICE LEAGUE 28 BOARDMAN PLACE, SAN FRANCISCO, WILL PROVIDE ME WITH REFERRALS TO HOMELESS SHELTERS PLEASE (SEE ATTACHED LETTER)

**TRANSPORTATION:** PUBLIC TRANSPORTATION SUCH AS THE FOLLOWING,SAN FRANCISCO MUNI,B.A.R.T.   A.C. TRANSIT  BUS SERVICE. SAM-TRANS.. BIKING. WALKING. E.T.C.

**INITIAL EMPLOYMENT PLAN** ALLIED FELLOWSHIPS SERVICE, 1524 29th STREET OAKLAND HAS A EMPLOYMENT PROGRAM, THAT PROVIDE JOB PLACEMENT,(SEE ATTACHED LETTER) DELANCEY STREET ALSO HAS THE SAME KIND OF PROGRAM,SEE ATTACHED LETTER) MY BROTHER HAS ALSO OFFERD TO HIRE ME AS A MAINTENANCE HELPER, SEE ATTACHED LETTER)

**SECONDARY EMPLOYMENT PLAN:** GENERAL LABORER, SUCH AS RESTAURANT WORK AS A BUSBOY, WAITER, HOUSCLEANING, E.T.C.   CAR RENTAL SERVICE.CLEANING CARS DRIVING,E.T.C., ALSO WILL PICIUP ALUMINUM CANS IF NECESSARY.

**SUPPORT GROUP (if required):** IF REQUIRED BY THIS BOARD.

**RECREATIONAL ACTIVITIES:** BIKE RIDING, BEACH-COMBING. AND COUNSEL THE YOUNTH OF THE COMMUNITY ABOUT ILL'S OF CRIME.

# RESUME WORK SHEET

**NAME:** HAROLD D. DYSON

**ADDRESS:**

**TELEPHONE:** ( )     **E-MAIL:**

**OBJECTIVE:** TO FIND GAINFUL EMPLOYMENT AND ONCE AGAIN BECOME A LAW-ABIDING CITIZEN OF THE COMMUNITY.

**EDUCATION:** HIGH SCHOOLS GRADUATE, 1 YEAR OF COLLEGE, HAVE PLANS TO ATTEND COLLEGE ONCE SETTLED.

**WORK HISTORY:** STARTED OFF WORKING IN RESTAURANT AS A BUSBOY, WAITER, AT HOLIDAY INN IN SAN FRANCISCO, OAKLAND FLIGHT SERVICE AT OAKLAND AIRPORT, WORKING AS A BAGGED HANDLER, AIRCRAFT SERVICE INTERNATIONAL, AT SAN FRANCISCO AIRPORT WORKING AS A AIRCRAFT REFUELER, BUTLER AVIATION, ALSO AT (SFO) THE SAME KIND OF WORK. AMERICAN AIRLINES AT (SFO) AIRLINE CATERING AN WORKING AS A TRUCK DRIVER. (PLEASE SEE ATTACHED RESUME)

**SKILLS:** GENERAL LABORER, WAITER, BUSBOY, AIRCRAFT REFUELER, TRUCK DRIVER. EQUIPTMENT OPERATOR, FORK LIFT, FMC, FREIGHT LOADING MACHINE USED FOR LOADING AND UNLOADING AIRCRAFT. I ALSO HAVE CLERICIAL SKILLS SUCH AS TYPING, FILING.

**PERSONAL INTERESTS/HOBBIES:** PHOTOGRAPHY, BIKE RIDING, BEACH COMBING, KITE FLYING, HORSEBACK RIDING.

'O: THE BOARD OF PRISON TERMS
    545 DOWNTOWN PLAZA SUITE #200
    SACRAMENTO, CALIF. 95814

'ROM: MR,HAROLD D, DYSON
      C-80683 SA-#316
      "NORTH FACILITY"
      P.O. BOX #705
      SOLEDAD,CALIF. 93960-705

                    "A BRIEF WORK HISTORY"


          BUTLER AVIATIONS. SFO-SAN FRANCISCO INTERNATIONAL AIRPORT.
          HANDLED GROUND SERVICES FOR A NUMBER OF MAJOR AIRLINES.
          WORK INCLUDED DOING THE FOLLOWING.
          EQUIPTMENT.BOEING 727-100's & 727-200 STRETCH.McDONNEL-DOUGLAS DC-8'S
          LAV AND WATER SERVICES
          REFUELING
          CABIN SERVICE
          BAGGEGE SERVICES/WHICH REQUIRED THE DRIVING OF VEHICLE/TRUCKS E.T.C. .
          OAKLAND FLIGHT SERVICES.OAK-OAKLAND METROPOLITAN AIRPORT.
          HANDLED GROUND SERVICES FOR .AMERICAN AIRLINES-BRANIFF AIRLINES-WORLD
          AIRWAYS.
          WORK INCLUDED DOING THE FOLLOWING.
          EQUIPTMENT.BOEING737.& 727-100's & STRETCHES.ALSO BOEING 707's.DC-10
          LAV AND WATER SERVICES
          REFUELING
          CABIN SERVICES/CATERING
          BAGGEE SERVICES/& COUNTS
          DRIVING RAMP SERVICES VEHICLES.

          RESTAURANT WORK.
          HOLIDAY INN 8th & MARKET STREET,SAN FRANCISCO,.CALIF.
          WORKED IN THE HOTEL'S RESTAURANT DOING BUSBOYS,WORKED MY WAY UP TO
          WAITER & AND DOING BANQUETS AND ROOM SERVICES.

          I ALSO HAVE SKILLS IN WATCH REPAIRING & JANATORIAL SERVICES.
          I ALSO AM A CLERK TYPIST.25 to 35 WORDS PER MINUTE.(AVERAGE)
          GENERAL LABOR. E.T.C. WILL DO ANY KIND OF WORK REQUIRED.

8/7/04

Dear Prison term:
    I write this letter concerning my
Son Harold D. Dyson, I know he
is very sorry for what he did, and
have repented over and over again for
this,
    And I believe that over the years
you have watched and observed him
enough to know that he is sorry for
his wrong and is ready to come out
to Start Life afresh in the right
way,

                    yours truly

                    Jeneiver C. Dyson

            214 PARK WEST STREET
            MERCED, CALIF. 95340

            209-383-4402

To Whom It May Concern: My name is Donald Dyson I am writing this letter on behalf of my brother Harold Dyson. The years he has been incarcerated, and has stayed out trouble should account for some consideration for him having another chance at becoming a productive citizen. I am not taking it lightly the horrible crime placed upon the victim, and his family, for that we all are very sorry. But I don't see keeping Harold any longer is going to change the advents that took place so long ago. But I feel that Harold could help others going through things such as he's gone through. I open my home to Harold for as long as he'll live with us that are my wife and myself. I also run a room & board house and would be willing to offer Harold the position of maintenance helper, with a salary between $6.00 to $7.00 an hour starting pay. Please consider giving him another chance at life. Thankyou

Donald Dyson

7612 TIERRA LAWN COURT

SACRAMENTO, CALIF. 95828-2318

916-381-2331

381-1726

September 10, 2004

To the Board of Prison Terms:

I believe that Harold has demonstrated time and time again over these twenty one years under the watchful eyes of the prison officials that he would be a good candidate and an asset to the Parole Board if you all give him this opportunity; I believe that Harold has demonstrated that he is remorseful there in prison, in his letters and during our many telephone conversations and visits. I know that Harold is not Prison material. He has always been a very good son, brother and a very good friend. He has maintained a working status whenever possible during his incarceration. He has maintained a reasonable and acceptable trouble free status during his incarceration; he has also counseled other inmates regarding turning their lives around and upon their release to do something positive with their lives and not return to prison.

I believe Harold deserves a second chance, he will not be a repeat to prison, he is deserving of your trust, let's make a prison success decision and release Harold on parole, Mr. Peabody and I conversed over the telephone and he agrees that Harold is a very good candidate for parole and is a success waiting to happen.

Harold will have full family support upon release. Please feel free to contact me with any concerns, please note address and telephone number below.
God Bless You All.

To To Respectfully,

Rose Ofili
5822 S. Stoneborough Street
Las Vegas, Nevada 89113
702 740 5898



DELANCEY STREET FOUNDATION

*600 Embarcadero   San Francisco   California 94107   (415) 957-9800*

MIMI H. SILBERT, Ph.D. President / CEO

April 26, 2004

Mr. Harold Dyson
-80683 Z-341-L
O. Box 689
Soledad, CA  93960

Dear Harold:

Thank you for inquiring about the Delancey Street Foundation. We have five facilities nationwide and we ask that people contact the facility that is closest to them: The one closest to you would be our **San Francisco** facility.

Enclosed is an introduction to the Delancey Street Foundation. As you can see, it requires a two-year commitment . It's based not on counseling, but on learning to live differently, on working, getting educated, and helping others. I hope the above information will be helpful to you. If you're looking to come to Delancey Street (which is not a temporary housing facility) upon release, you can call the facility nearest you or just arrive and sit on our "bench", where all prospective candidates sit awaiting an interview. Because we always have more applicants than spaces, we can't guarantee acceptance. Our "Introduction Summary", included here, gives you some idea of what we're about.

If you do decide to apply, we look forward to meeting you. If you want to call, my number is **(415) 512-5104** (no collect calls please). If not, we wish you the best for your future.

Sincerely,

Sandra Munoz
Intake Coordinator

Enclosure

NEW YORK
Turk Hill Road
Brewster, NY

NEW MEXICO
P.O. Box 1240
San Juan Pueblo, NM

NORTH CAROLINA
811 N. Elm Street
Greensboro, NC

LOS ANGELES
400 N. Vermont Avenue
Los Angeles, CA

## INTRODUCTION TO THE DELANCEY STREET FOUNDATION FOR APPLICANTS

Delancey Street is a non-profit self-help group for about 1500 drug addicts, alcoholics, prostitutes, ex-convicts, and others whose lives have hit bottom. In this community, residents learn to care for others, to develop values and self-reliance, gain some dignity for themselves, learn occupational skills, get an education, and earn a sense of self-worth so they can ultimately graduate from Delancey Street and make a legitimate and successful life in society. San Francisco is the headquarters with 500 residents; the other facilities are in Los Angeles, New Mexico, North Carolina and New York.

It is primarily a self-supporting, self-governing community maintained entirely by the men and women who come to Delancey for help, representing all racial, cultural and socio-economic groups. Many residents come into Delancey Street upon referral from an agency of the criminal justice system. Interviews are conducted by other residents of Delancey Street who have been here long enough to understand Delancey's values. Interviews are conducted on Delancey Street premises as well as in jails. It is important to tell the whole truth in your interview. Since we live as an extended family, we come to know all about each other. If someone lied in the interview, they are asked to leave, since admitting the truth about our lives and situations begins the process of change at Delancey Street. New residents are asked to make a two year commitment because we believe that is the minimal time required to really turn a life completely around which has spent years developing self-destructive patterns. The stay at Delancey Street is disciplined, serious business.

The first few months of Delancey Street are considered the "immigration" phase. Upon acceptance, men will have their hair is trimmed to short length, and the women are asked to remove all makeup. Clothing is provided and the first focus is to turn around street and/or gang images and develop new self-concepts. These first few weeks are spent in maintenance jobs such as cleaning the facilities and serving meals. Residents are allowed to write immediate family after 30 days, and a call after 90 days; however, they are generally encouraged to spend their time and energy in "immigration" getting to know those around them, and becoming involved in their new environment. Following that, letters, phone calls and visits are earned along with responsibilities and rewards.

The faster new residents learn good work habits and basic positive interaction skills, the more quickly they will earn their way out of maintenance and out of Immigration and into one of the numerous vocational training departments where they will learn vocational skills. Training Schools, some of which generate income for the Foundation, provide job training in many areas including moving, the construction trades, auto maintenance, bookkeeping, culinary arts including café, restaurant and catering skills, sales, among numerous others. The focus is on learning to give, to get a good work ethic, and to help. Also, a strong emphasis is placed on academic education. Residents are tutored until they receive a high school equivalency, and numerous in-house classes are provided.

There are three primary rules: 1. No physical violence; 2. No threats of violence; 3. No drugs or alcohol. Anyone breaking these rules will be asked to leave. Other problems are punished by extra work such as washing dishes. We believe in teaching people to admit their mistakes, fix them, and move forward.

No one in Delancey Street, not even the President, receives a salary. There is no official staff at Delancey Street. Everyone who comes in works his or her way up into some sort of position in which he/she is learning a new job from the person over them who has held that job before, and teaching the job he/she has now to the newer resident. In this way, everyone at Delancey Street is pulling together toward the same goals. No one is simply a receiver; everyone is a giver as well. You are not coming to a program based on counseling. We have a strong work ethic and base our change on learning new ways of living by doing.

If you are interested in reading about Delancey Street in more detail, please write the Intake Department and ask for a copy of the chapter from a book written by our President which is entitled "Delancey Street: Process of Mutual Restitution", and we will be delighted to forward it to you.

# Allied Fellowship Service

*Allied Fellowship Service*
*Employment Program*

AFS provides Employment Training Services for those re-entering society from the Criminal Justice System. We provide direct job placement for our participants, and most importantly we provide our participants with the interview skills to deal with their pasts. AFS will prepare participants with resumes and the necessary job tools that will keep them employed. We at AFS work directly with the community to establish job leads that will assist those with barriers to find gainful employment and make a successful transition back into society. Together we will make a difference!

## SERVICES PROVIDED:

⇒ Employment
⇒ Case management service
⇒ Counseling
⇒ Housing
⇒ Clothing
⇒ Transportation
⇒ Community Referrals

⇒ Stress management
⇒ Self Esteem
⇒ Substance Abuse Support Groups
⇒ Family Reunification
⇒ Job Training/Preparation
⇒ Life Skills Training

## BENEFITS FOR EMPLOYERS:

- Extensive background checking
- Qualified Applicant Screening
- Clients are bondable through the Employment Development Dept.
- Reduces the cost of recruitment
- Provides valuable training and teaches responsibility
- Provides capable and productive employees
- Promotes a positive community image

## BENEFITS FOR PROGRAM PARTICIPANTS

- Promotes economic and self empowerment
- Provides an opportunity to lead a more productive life
- Provides a sense of personal growth and achievement

Contact Information:
Bernadine Martin, CEO
John Docherty, Project Coordinator
Beverly Chao, Orientation Counselor

1524 29th Ave.
Oakland, CA 94601

[510] 535-1236
[510] 535-0166 Fax

*An Uncommon Support / Service Program*
*38 years of service to the community*



## NORTHERN CALIFORNIA
## SERVICE LEAGUE

28 Boardman Place • San Francisco, CA 94103 • (415) 863-2323 • Fax (415) 863-1882
website: *www.NorCalServiceLeague.org* • email: *NCSL@NorCalServiceLeague.org*

July 8, 2004

Harold D. Dyson, C-80683
Z-341-L
CSP Soledad
PO Box 689
Soledad, CA 93960-0689

Dear Harold,

Thank you for contacting the Northern California Service League. NCSL is one of several
agencies throughout the state of California that participate in the Parolee Employment Program
(PEP). This program is under the umbrella of the California Department of Corrections.

The emphasis of this program is to assist men coming out of prison to find employment and
address their career goals and employment issues. Regarding employment, when you are
paroled, please report to your parole agent for a referral to the nearest PEP provider. Should you
be paroling to San Francisco or Santa Clara County, please come by and visit us.

Regarding housing, unfortunately, NCSL does not have any direct referral for you. There are
several homeless shelters in San Francisco and we can provide you with a list showing these
locations.

We hope this help.

Sincerely,

Doug Yee



A UNITED WAY
AGENCY

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC-128B (8/87)

Name and Number:    DYSON, H.    C80683    ZW-341L

Inmate DYSON, CDC# C80683, has successfully completed 2 weeks seminar series entitled, How To Become A Sober Father and Not Get Angry, sponsored by CTF's Muslim Development Center. The series is designed to enlighten participants regrading the ever changing role of father's in the American Society and how, despite social pressure, the fundamtnetal responsiblities of the fathers have not changed. The primary goal of this program is to eliminate anger as a response and remove the desire for intoxicants (drugs, alcohol, etc.) from individuals who have within themselves the potential to become model fathers and community leaders. Inmate DYSON participation in the program entitles him to this chrono.

Ori   C-File
      Writer
      Inmate

Antar Jannah
Muslim Chaplain
Correctional Training Facility

Date    4/9/2007                         Informational                              General Chrono

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC-128B (8/87)

Name and Num    DYSON, H    C80683    ZW-341L

Inmate DYSON, CDC# C80683, has successfully completed the CTF Muslim Development Center seminar entitled, The Success Tools of the Master. This 16 weeks series is a comprehensive interfaith entrepreneur and leadership training program for all offenders. The series focuses on the moral values, faith, character, and attributes of God's Messengers and how these models serve us today.Inmate DYSON, actively participated in class discussions and successfully completed his assignments. The program emphasized personal strengths needed to control anger and other emotions and the tools necessary to overcome various addictions and vices. Inmate DYSON, is to be applauded for his participation and contribution to the success for this program. Inmate DYSON, participation in the program entitles him to this chrono.

Ori   C-File
      Writer
      Inmate

Antar Jannah
Muslim Chaplain
Correctional Training Facility

Date    2/23/2007                        Informational                              General Chrono

NAME AND NUMBER    **DYSON**    **C80683**    **ZW-341L**    CDC-128B

Inmate DYSON  C80683, has successfully completed 18 weeks seminar series entitled, *"How To Become A Sober Father and Not Get Angry,"* sponsored by CTF's Muslim Development Center. The series is designed to enlighten participants regarding the ever changing role of father's in the American Society and how, despite social pressure, the fundamental responsibilities of the fathers have not changed. The primary goal of this program is to eliminate anger as a response and remove the desire for intoxicants (drugs, alcohol, etc.) from individuals who have within themselves the potential to become model fathers and community leaders. Inmate DYSON's participation in the program entitles him to this chrono.

Orig:   C-File
        Chaplain
        Inmate

Imam Antar Jannah
Muslim Chaplain
Correctional Training Facility

**Anger Management, Fatherhood; *Millati Islami* (The Path To Peace) Addiction Recovery Program**
**8/4/2006**                    Informational                              General Chrono

# Certificate of Completion

*presented to*

# H. DYSON

for completion of the Interfaith based

## ANGER MANAGEMENT COURSE

presented this 20th day of February in the year 2002 . He is commended for his participation and enthusiasm in this endeavour.

IMAM ANTAR JANNAH
Muslim Chaplain/Course Instructor
Correctional Training Facility

DEVELOPMENT CENTER

C-1055

Inmate DYSON C80683 has successfully participated in and completed the Muslim Development Center's Anger Management Course. The course is based on principles rooted in Interfaith Religious Scripture and spiritual models of exemplary social behavior. The course was offered over a two week period of seminar based lectures and classes participation. Inmate DYSON is commended for his outstanding participation and completion of the Interfaith based Anger Management Course and was awarded a Certificate of Completion.

**Original:** Central File
   **cc:** Chaplain
      Inmate

Imam Antar Jannah
Muslim Chaplain
Correctional Training Facility

## ANGER MANAGEMENT COURSE COMPLETION

DATE: February 20, 2002

**GENERAL CHRONO**

NAME and NUMBER: DYSON      C80683   NO SA321L      CDC 128-B

Inmate DYSON has successfully completed a week long course on the cause, prevention, treatment, and management of Tuberculosis, Hepatitis, HIV/AIDS, and Sexually Transmitted Diseases.

Original: Central File
   cc: Inmate

R. Uhl, PHN
Peer Education Coordinator

Date: 09/09/1998

(Laudatory Chrono)

**GENERAL CHRONO**

NAME and NUMBER: DYSON      C80683   NO SA321L      CDC 128-B

Inmate DYSON has successfully completed a four hour course on the cause, prevention, treatment and management of HIV/AIDS, an infectious disease.

Original: Central File
   cc: Inmate

R. Uhl, PHN
Peer Education Coordinator

Date: 09/09/1998

(Laudatory Chrono)

**GENERAL CHRONO**

NAME and NUMBER: DYSON                 C80683   NO SA321L                  CDC 128-B

Inmate DYSON has successfully completed a two hour course on the
cause, prevention, treatment and management of Sexually transmitted diseases,
an infectious disease.

Original: Central File
        cc: Inmate

_____
R. Uhl, PHN
Peer Education Coordinator

(Laudatory Chrono)

Date: 03/11/1998                                                    GENERAL CHRONO

---

NAME and NUMBER: DYSON                 C80683   NO SA321L                  CDC 128-B

Inmate DYSON has successfully completed a two hour course on the
cause, prevention, treatment and management of Hepatitis,
an infectious disease.

Original: Central File
        cc: Inmate

_____
R. Uhl, PHN
Peer Education Coordinator

(Laudatory Chrono)

Date: 03/13/1998                                                    GENERAL CHRONO

---

NAME AND NUMBER: DYSON        C80683      SA321    CTF-NORTH  CDC-128-C

INDIVIDUAL THERAPY AS REQUESTED PER BOARD OF PRISON TERMS:
This inmate has completed a course of individual therapy.  During the course of this
therapy, his understanding of his commitment offense was explored, as well as the factors
which led up to it.  Programs completed and other evidence of his efforts to change were
discussed, and he detailed his future plans and goals.  As a result of this therapy and
his increasing self-understanding, his violence and recidivism potentials should be less
than for the average inmate.

                              S. TERRINI, Ph.D.
                              Staff Psychologist
                              CTF-Soledad

DATE: 06/27/97        DYSON       C80683   ar              PSYCHIATRIC
ORIG: C-file, CC: CCI, I/M, Psych file, Chrono copy

**NAME AND NUMBER:** DYSON    C80683    SA321    **CTF-NORTH  CDC-128-C**

**INDIVIDUAL THERAPY AS REQUESTED PER BOARD OF PRISON TERMS:**

This inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate.

S. TERRINI, Ph.D.
Staff Psychologist
CTF-Soledad

**DATE:** 06/27/97    DYSON    C80683  ar                    **PSYCHIATRIC**
**ORIG:** C-file, CC: CCI, I/M, Psych file, Chrono copy

---

NAME and NUMBER:    DYSON    C-80683 SA-316 CTF-NORTH    CDC-128-C

**COMPLETION OF PARTICIPATION IN THE "LIFESKILLS" PROGRAM:**

This inmate was an active and successful participant in the Lifeskills Group. This group met one hour per week for ten weeks. Its purpose was to encourage better impulse control and more effective living. Topics discussed included substance abuse, overcoming anger and aggression, stress management, forming life goals, building self--esteem, improving problem-solving skills, and re entry: making a successful return to society.

Orig:    C-File
Copy:    Unit PA/CC-I
         Inmate                      B. BAKEMAN, Ph.D.
         Psych file                 Staff Psychologist
         Chrono file                CTF-Soledad

DATE 09/12/96    DYSON    C-80683       ar       MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER                        3C1-128                    CDC-128-B (Rev. 4/74)

Inmate **DYSON,    C-80683    **, has been an active member of "Time-Out" Narcotics Anonymous group at CSP-CORCORAN since  2/93  /  9/93  . During the last quarter ( 7/93 thru  9/93 ) he has earned a participation rating of [X] Excellent 81%,  [ ] Very good 67%-80%, or  [ ] Good 51%. This is a rating based on his attendance at the meetings.

Orig:    C-File
         Writer                     D. OFTEDAHL
         Inmate                     NARCOTICS ANONYMOUS SPONSOR
                                    CSP-CORCORAN

DATE    9-30-93    (INFORMATIONAL CHRONO)                    GENERAL CHRONO

NAME and NUMBER DYSON                  C-80683              3C1-128L   CDC-128-B (Rev. 4/74)

On 7-21-93, all Self-Help groups at CSP-CORCORAN were suspended. The suspension was per

Sacramento, pending resolution of a labor issue.

Inmate ___DYSON_____, has been an active participant in the Narcotics Anonymous

group at CSP-CORCORAN, from date, __02-02-93___ through __07-20-93___. He is commended

for his attendance and participation in the Narcotics Anonymous group meetings.

Orig:  C-file
  cc:  Writer                         D. OFTEDAHL
       Inmate                         NARCOTICS ANONYMOUS/SPONSOR
                                      CSP-CORCORAN

   DATE    AUGUST 13, 1993                                GENERAL CHRONO

---

NAME and NUMBER  C-80683    Dyson, H.                      CDC-128-B (Rev. 4/74)


Dyson attended A.A. Meetings from 2-10-93
to 4-21-93.

Orig: C-File
cc:  I/M                                    D. Mitchell

DATE  7/12/93                                 GENERAL CHRONO

                                                    128B

NAME/NUMBER

INMATE  DYSON, Harold _____, NUMBER  C80683  HAS BEEN PARTICIPATIN
IN THE NARCOTICS ANONYMOUS GROUP IN LEVEL 3 AT CSP/CORCORAN.  HIS ATTENDANCE AT
THESE MEETINGS FROM __2-9-93__ TO __4-27-93__ HAS QUALIFIED HIM FOR A RATING
OF GOOD (51% TO 66%), VERY GOOD (67% TO 80%) AND EXCELLENT (81% TO 100%).


ASSOCIATE WARDEN                        NARCOTICS ANONYMOUS, PRIMARY SPONSOR
                                        M. MILLER, CCRS
                                        CSP/CORCORAN
                                        (209) 992-8800


CC:  C-FILE
     INMATE

DATE  4-93                  CSP/CORCORAN          GENERAL CHRONO

NAME and NUMBER

(LAUDATORY CHRONO)    CDC-128 B (REV. 4/74)

Inmate, Dyson, H.   , CDC# C-80683 Housed in, 2-242-L has been in the Alcoholics Anonymous Program and has attended the regularly scheduled meetings. During his attendence he has been an active participant, and has shown an honest desire towards helping himself and others through this self-helf-program. His contributions has been a great asset to this program.

*RE: PARTICIPATION IN A SIGNIFICANT SELF-HELP-PROGRAM

cc: C-File
    Inmate

REV. J.E. RODRIGUEZ
CATHOLIC CHAPLAIN
CSP-SOL, Facilities I & II

Date: DEC. 8, 1992                                          GENERAL CHRONO

---

NAME and NUMBER                                          CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN A SIGNIFICANT SELF-HELP PROGRAM

inmate DYSON, HAROLD D. CDC# C-80683      housed in 2-242-I  has participated in the NARCOTICS ANONYMOUS PROGRAM, and has attended regularly schedule meetings durring the last three(3)months, durring his attendance he has been an active participant and has shown an honest desire to help himself and others through this self-help program, this inmate should be commended for his contributions and for the positive attitude he has displayed.

orig: C-FILE
    cc: CORRECTIONAL COUNSLEOR
        INMATE
        WRITER

M.R.Brewer
MIKE BREWER-SPONSOR
NARCOTICS ANONYMOUS
FACILITIES 1&11
CSP-SOLANO

DATE    DEC. 8, 1992                                          GENERAL CHRONO

---

NAME and NUMBER

(LAUDATORY CHRONO)    CDC-128 B (REV. 4/74)

Inmate, Dyson, H.   , CDC# C-80683 Housed in, 2-242-L, has been in the Alcoholics Anonymous Program and has attended the regularly scheduled meetings. During his attendence he has been an active participant, and has shown an honest desire towards helping himself and others through this self-help-program. His contributions has been a great asset to this program.

*RE: PARTICIPATION IN A SIGNIFICANT SELF-HELP-PROGRAM

cc: C-File
    Inmate

REV. J.E. RODRIGUEZ
CATHOLIC CHAPLAIN
CSP-SOL, Facilities I & II
GENERAL CHRONO

DYSON, HAROLD _____ , C_80683 _____ has successfully completed the " Breaking Barriers " program by completing (30) hours of program participation. This inmate was a program participant from JANUARY 7, 1991 _____ to JANUARY 18, 1991 _____ ." Breakir Barriers is a voluntary self-help program ".

S. Irving, CC I
Breaking Barriers Program Manager
CMF-South, Level III

*D.L. Smith*
D.L. Smith
Correctional Officer
Breaking Barriers Facilitator

cc: Central File
    Counselor
    Inmate
    File

DATE 1-18-91

GENERAL CHRONO

**NAME and NUMBER**

CDC-128-B (Rev. 4/74)

DYSON, HAROLD _____ , C-80683 _____ has sucessfully completed the " Breaking Barriers " program by completing (30) hours of program participation. This inmate was a program participant from Dec. 13, 90 _____ to Feb. 19, 91. " Breaking Barriers is a voluntary self-help program ".

SOL IRVING
Correctional Counselor
Breaking Barriers Program Manager
CMF-South, Level III

        cc:   Central File
              Counselor
              Inmate
DATE          File

GENERAL CHRONO

NAME and NUMBER     DYSON, Harold     C-80683     M-330

The patient did not manifest any psychiatric symptoms at all.  He is not on any psychotropic medication.  He is a Cat T and, therefore, will be transferred to Unit II.

*C.F. Dasalla, M.D.*
C.F. DASALLA, M.D.
Staff Psychiatrist

Orig: C-File
cc:   Psych Jacket
      Counselor

R: 7/3/87
T: 7/14/87   CFD/sj

DATE    7/2/87    I, L, M-WINGS SCREENING          CMF          xxPSYCHIATRIC—DENTALxx

Case 2:07-cv-04916-KHH   Document 9-7   Filed 02/26/2008   Page 35 of 49

This 31-year-old inmate has been in individual psychotherapy for the past year. His offense was in large part an explosive episode arising out of his over-controlled, compulsive life style. Subject is a first-time offender with no prior arrests, no history of alcohol or drug abuse, working hard to obtain high-set goals that he felt personally impelled to achieve. Under this internal pressure his tightly controlled emotions overwhelmed his coping ability under the additional stress of a minor auto accident, resulting in an irrational killing of the other driver.

Over the past year in psychotherapy, we have extensively explored the evolvement and development from childhood of a strongly obsessive-compulsive life style with rigid, high expectations of achievements and strong emotional denials. Mr. Dyson has gained considerable insight into how he imposed high levels of stress upon himself and attempted to exert control over all aspects of his life and those close to him. From a psychological standpoint,

DATE                                          MEDICAL—PSYCHIATRIC—DENTAl
        10-18-89    CMF    UNIT II  PROGRESS CHRONO  (Page 1 of 2)

NAME and NUMBER                                                              CDC-128-
                DYSON, Harold              C-80683    P-207-L

(continued)

I believe that the likelihood of Mr. Dyson reoffending is remote. He has the intellectual capacities to prevent such a buildup of internal stresses again such as occasioned the precipitation of his offense. For him to be able to live a less demanding life style and increase his own sense of self-fulfillment, I have encouraged him to seek therapy on hs own in the community when he is eventually paroled. To date, he has made excellent use of the time spent in psychotherapy.

Orig:  Central File                        ARTHUR L. MATTOCKS, Ph.D.
cc:    Outpatient Health Record            Senior Clinical Psychologist
       Counselor
T:     10-22-89 ALM:em

DATE                                          MEDICAL—PSYCHIATRIC—DENTAl
        10-18-89    CMF    UNIT II  PROGRESS CHRONO  (Page 2 of 2)

NAME and NUMBER                                                              CDC-128

MEDICAL—PSYCHIATRIC—DENTAl

Exhibit B



State of California                                                                                    Board of Prison Terms

# Memorandum

Date  :

To   :   Commissioners
         Deputy Commissioners

Subject:   **Psychological Reports**

Psychological reports have traditionally been considered by hearing panels in evaluating suitability for parole during the lifer hearing process. The result of this is that these reports have been used for purposes for which they were not intended. This is especially true for those inmates who are not part of the Mental Health Services Delivery System (MHSDS). Effective immediately psychological reports, using a new format, will be provided during the lifer hearing process only for those inmates who are assigned to MHSDS. Inmates who are not a part of the MHSDS will have initial psychological reports generated upon entry into the Department of Corrections and Rehabilitation. Psychological Reports for subsequent lifer hearings for non-MHSDS inmates will not be generated thereafter. This policy is in effect notwithstanding Department of Corrections and Rehabilitation Department Operations Manual section 62090.13.

For inmates not assigned to the MHSDS, the following procedures are to be used:

- In cases where a psychological report has been ordered by a previous panel but not provided by the institution, the current panel shall not postpone a current hearing. The panel shall proceed with the hearing in the absence of the report.

- In cases where the latest psychological report contains a risk assessment, the hearing panel shall articulate to the inmate and his counsel that the panel has read and considered the section of the report regarding risk assessment, and is not assigning any weight to it in the panel's decision.

- As to aspects of the psychological report other than a risk assessment, in determining what weight to give to any opinion expressed by the clinician, you should consider the facts and materials upon which each opinion is based, and the reasons for the opinion. An opinion is only as good as the facts and reasons on which it is based. If you find that any fact has not been proved, or has been disproved, or is inconsistent with other information you have read and considered in preparation for or during the course of the parole suitability hearing, you must consider that in determining the value of the opinion. Likewise, you must consider the strengths and weaknesses of the reasons on which it is based.

## RECOMMENDATION FOR ADAPTIVE SUPPORT

Inmate Name _____Dyson_____ CDC# _C80683_ Institution _CTF_ Housing _2 4_
_3 7_

### *Excluded from Developmental Disability Program (DDP):*

**NCE** ☑ Received passing score on cognitive test. No further evaluation needed without referral.

**DD0** ☐ Inmate did not pass or did not take a cognitive test, no adaptive support needs, provisional. Reevaluate within 120-210 days.

**NDD** ☐ Inmate did not pass or did not take a cognitive test, no adaptive support needs. No reevaluation needed without referral.

### *Included in DDP:* *Inmate must always have a Staff Assistant in disciplinary hearings, classification committee hearings, and in all contacts involving the use of a CDC Form 114-D (administrative segregation reviews and hearings). In addition:*

**DD1** ☐ Does not usually require prompts to initiate/complete self-care and activities of daily living. Inmate may need adaptive supports when under unusual stress or in new situations.

**D1A*** ☐ Same functional ability as DD1.

**DD2*** ☐ Requires occasional prompts to initiate/complete self-care and activities of daily living.

**DD3*** ☐ Requires frequent prompts to initiate/complete self-care and activities of daily living.

***Victimization Concerns: requires housing in a designated DDP building/unit/wing, consistent with other case factors.**

### Justification of DD0 and NDD / Adaptive Support Needs of DD1, D1A, DD2, and DD3:

_Pass Quick Phase I_

_____

_____

_____

_____

_____

_____

---

Check one: ☐ **Regional Center Consumer**
☐ **May be eligible for Regional Center referral** *(possible onset before age 18)*
☐ **Not eligible for Regional Center referral** *(no developmental disability before age 18)*

---

Mental Health Clinician: _____(Signature)_____ JOE REED, Ph.D
CTF STAFF PSYCHOLOGIST
(If the above is unlicensed)    (Signature)    P.O. BOX 686    Title    Date
Licensed Clinician:    SOLEDAD, CA 93960

_____    _____    _____    _____
Signature    Print or stamp name    Title    Date

DISTRIBUTION:  ORIGINAL:  Central File
COPIES:  Unit Health Record    Assigned CC-I    Housing Unit    I/M Assignment Office    Inmate
DDP Counselor    C&PR or CC-III    Education File    Work Supervisor

 **DDP**

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS
CDC FORM 128 C                                                        North
                              Mental Health Placement

NAME: Dyson _____ CDC#: C80683  INST: CTF ✓ HOUSING: 5A 321L
      LAST      FIRST      MI

THIS INMATE HAS COMPLETED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS (Check box(s) below):

☒ Does Not Meet Criteria for inclusion in the Mental Health Treatment Population.

☐ Meets Inclusion Criteria for the MH Treatment Population. (Check Level of Care (LOC) Below)

       ☐ Inclusion is for a Medical Necessity (Obtain Chief Psychiatrist Signature Below).

☐ Presently included in MHSDS, new LOC below (Check LOC Below).

LOC ☐ Inpatient DMH  ☐ Crisis Beds(MHCB)  ☐ Enhanced Outpatient Program (EOP)/Cat J ☐ Clinical Case Management (CCCMS) Cat

Level of Functioning Assessment (GAF Score): |8| ⟨diagonal⟩  Psychotropic Medication Pescribed: ☐ Yes ☒ No

Behavioural Alerts: Does not have a mental illness _____

Steven J. Terrini, Ph.D.
  Staff Psychologist     x2280  Stn J Telln PhD                   [illegible] Beckerer Ph.D.
  CTF-Soledad
Clinician's Name(print)  Phone/ext. Clinician's Signature          Chief Psychiatrist or Designee Co-Signature
Original C-file:  CC:  CCI, Inmate, Medical Record

Exhibit C

# THE PRISON LINK

**A NEWSLETTER FOR CALIFORNIA PRISONERS**
By Benjamin Ramos, Attorney
and Cheryl Montgomery, Attorney

LEGAL ADVERTISEMENT
FOURTH QUARTER, 2007

## CA BOARD OF PAROLE HEARINGS STATS

| | Grants | Total Hearings |
|---|---|---|
| Williams | 7 | (108) |
| Biggers | 9 | (404) |
| Martinez | 4 | (400) |
| Prizmich | 8 | (257) |
| Inglee | 16 | (304) |
| Davis | 2 | (421) |
| Eng | 8 | (406) |
| Woods | 10 | (204) |
| Garner | 11 | (422) |
| Shelton | 7 | (438) |
| Poncabare | 1 | (97) |
| Bryson | 13 | (414) |
| H-Ritter | 0 | (28) |
| Kubochi | 5 | (356) |

| | No. of years | (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|---|---|
| Williams | | 26, | 29, | 9, | 5, | 4 |
| Biggers | | 106, | 107, | 40, | 26, | 20 |
| Martinez | | 102, | 79, | 29, | 24, | 24. |
| Prizmich | | 75, | 45, | 27, | 22, | 17 |
| Inglee | | 108, | 61, | 27, | 21, | 9 |
| Davis | | 138, | 85, | 29, | 21, | 23 |
| Eng | | 85, | 96, | 60, | 28, | 16 |
| Woods | | 55, | 43, | 20, | 7, | 12 |
| Garner | | 102, | 56, | 32, | 17, | 25 |
| Shelton | | 69, | 88, | 39, | 43, | 70 |
| Poncabare | | 20, | 16, | 7, | 6, | 5 |
| Bryson | | 61, | 111, | 46, | 22, | 50 |
| H-Ritter | | 3, | 11, | 1, | 1, | 2 |
| Kubochi | | 76, | 82, | 37, | 35, | 18 |

## STIPULATIONS & (POSTPONEMENTS)

| | | |
|---|---|---|
| Williams | 23 | (28) |
| Biggers | 71 | (92) |
| Martinez | 34 | (133) |
| Prizmich | 24 | (61) |
| Inglee | 65 | (60) |
| Eng | 24 | (110) |

| | | |
|---|---|---|
| Woods | 27 | (56) |
| Garner | 30 | (176) |
| Shelton | 49 | (122) |
| Poncabare | 13 | (41) |
| Bryson | 38 | (107) |
| H-Ritter | 3 | (10) |
| Kubochi | 28 | (99) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### *Who's History...?*

**Sims**–H_ _ust finished training and op_ _ out due to health rea_ _.

**Harris-Ritter**–_ _ed to resign b_ _ Gov's staff.

**Williams**–Little sa_ _bout hi_ _t. He may simply have wanted to _ _.

**Inglee**–Not reappointe_ _e Gov. ... probably due to too many gra_ _.

**Poncabare**–Dep_ _shortly a_ _arriving.

\* \* \* \* \* \* \* \*

As of _ _-8-07–There are _ _ten (10) Commi_ _ners with two vacancies _ _ the Gov_ _or to fill. Time will tell if Arnold _ _ find _ _one other than a cop to take the job.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DIRTY TRICKS: HOW TO FIGHT BAC_

The practi_ _ of law has unfortuna_ _drifted far away from _ _e days when atto_ _ys commonly extended eac_ _ other prof_ _nal courtesies, obeyed rules o_ _vidence _ _d procedure and represented their cl_ _ts _ _n ethics and integrity. Or was it ever that y_ _ In virtually every case, from family la_ _an_ _personal injury to misdemeanors a_ _eath pen_ _y cases, the practice of law has, _ _he most part, _ _ned into a bare-knuckled _ _n struggle, where th_ _ly goal is to win at _ _cost. This new "holy gra_ _is having prof_ _d and systemic consequences t_ _hout th_ _gal profession and is altering the natu_ _d _ _lity of justice obtainable in our legal syste_

LEGAL ADVERTISEMENT

Case 3:07-cv-04955-WHA    Document 5    Filed 02/25/2008    Page 42 of 49

# NEWS FROM TiPS

Form___ known as Voters Corrections Reform Coalition (VCRC), this past Novem____ __e changed our name to Taxpaye___ __r Improving Public Safety (TiPS) for better name recognition & ap____ with the public. All prior paperwork and ___embership details under VCRC were automatically trans____ ___d to TiPS, so the only thing members need to ___ keep their union dues current. TiPS (along with ___alifornia Prisoners Union), is the **only** legitimate unio___ ___presenting inmates, wards, parolees, probatio___ ___, and their families.

**LOBBY DAY: on April ___ ___th** they'll have their annual "Lo___ ___ay" in Sacramento, where members of TiPS will come up to the State Cap___ for the day to meet with ___islators and staff to discuss prison issues. Our members are the backbone of our p___ical power, so all ___se who are able are encouraged to attend.

**ISL INMATES & FOREIGN NATI___ ___ __n** addition, thru TiPS our lobbyists are sponsoring several pieces of legislation this year ranging from ___ing politics from parole (for ISL inmates) and having a fair Board, to sending 18,000 undocument___ ___ma___ who are foreign nationals back to their home countries. Within the next 3 years we hop___ ___end 25,000 ___tes back home to their families.

**POLITICAL EMPOWERM___ ___:** the line has been dra___ __n the sand. The prison reform community – thru TiPS – is taking back t___ r rights from the law enforceme___ ___pecial interests who see inmates as dollar signs. We have the high ___ ___ntial for more members and financial b___ ___g, and finally we are now building the unity thru TiPS to flex ___ political muscles and restore fairness to corre___ ___s.

**THREE STR___ ___S:** we continue to analyze the different initiative proposals ___ing out of the LA District Attorney's off___ ___nd Calif. District Attorney's Association. While TiPS staff will ma___ ___commendation to our members, i___ ___ll ultimately be up to our members to vote on TiPS official position – to ___ ___rt or oppose the initiative ___nal version. Want your vote to count? You have to be a member. For more inf___ ___ion on membership ___ ___visit us online at www.ForPublicSafety.com or write to us at: TiPS, P.O. Box 255456, ___ ___ento, CA ___ __565.

*- Matthew Gr___*

# BPH STATISTICS

Note: We have two separate and slightly different compilations of statistics for 2005. This one seems to be the most accurate:

| | | | Non-Murder cases reviewed (34) | |
|---|---|---|---|---|
| (2,023) | | | Referred to en banc | 29 |
| Parole grants: | 1-year denials | 715 | No action (approved) | 05 |
| First degree murder | 28 | 2-year denials | 582 | First degree murder cases reviewed (38) |
| ___5 | 3-year denials | 234 | Reversed | 34 |
| Kidnaps | 12 | 4-year denials | 201 | No action (approved) | 04 |
| Attempted murder | 5 | 5-year denials | 149 | | |
| P.C. §12310(c) | 1 | | Reversed | 1?1 |
| Total parole grants: | **141** | | No action (approved) | 20 |

# Only a few cases cross the governor's desk

The parole board screens out a vast majority of cases before they ever reach the governor, rejecting parole for inmates most of the time. The board's record for the past four years:



158 grants (5%)

204 grants (7%)

166 grants (5%)

117 grants (5%)

2,957 denials

2,620 denials

3,117 denials

2,384 denials

Source: California Department of Corrections, Mercury News research

PAI — MERCURY NEWS

VOLUME 2    NUMBER 2    CALIFORNIA LIFER NEWSLETTER #8    FEBRUARY  2006    PAGE 13

## Litigation (from page 12)
## FEDERAL COURTS

### BOARD PROVIDES STATISTICS IN RESPONSE TO EASTERN DISTRICT DISCOVERY ORDER

#### *Willard v. Runnels*
#### No 04-0473

Although, judging by the briefs filed to date petitioner Edward Willard's chance of success may be limited, the AG has provided statistics in response to the Court's discovery order, which are summarized below. Briefing was completed on December 7th.

| Year | 1 | 2 | 3 | 4 | 5 | 6(a) |
|------|------|-----|---|-----|------|------|
| 1994 | 977 | 11 | 5 | 1 | 6 | 1 |
| 1995 | 1068 | 7 | 2 | 1 | 3 | 0 |
| 1996 | 1147 | 14 | 3 | 2 | 6 | 1 |
| 1997 | 1147 | 9 | 1 | 1 | 14 | 0 |
| 1998 | 1058 | 15 | 5 | 5 | 11 | 0 |
| 1999 | 1005 | 12 | 8 | 5 | 1 | 0 |
| 2000 | 1103 | 27 | 3 | 24 | 3 | 0 |
| 2001 (b) | 1807 | 31 | 3 | 37 | 3 | 0 |
| 2002 | 2468 | 98 | 3 | 95 | 1 | 0 |
| 2003 | 2276 | 107 | 1 | 88 | 10 | 0 |
| 2004 | 2248 | 139 | 3 | 93 | 42 (c) | 1 |

Column 1:  number of hearings

Column 2:  parole grants

Column 3:  rescinded by BPH

Column 4:  reversed by governors

Column 5:  released on parole

Column 6 :  found suitable at initial hearing

*Editor's Notes*:

(a)  Reflects BPH's illegal policy and underground regulations prohibiting suitability at initial hearing (exceptions only for terminally ill or other compelling circumstance) and requiring initial multi-year denial followed by gradual reduction in set-off before suitability is found.

(b)  Reflects statutory change to allow 2-member panels

(c)  Reflects change from Governor Davis' policy (0% parole, politically convenient and juice cards excepted), to Conan's policy (staff selects 30% of cases that it refuses to allow Conan to review).

### ROSENKRANTZ LURKS

#### *Rosenkrantz v. Blanks*
U.S. District Court,
Central District of California,
No. 03-06851

The ultimate decision will have a substantial impact on the State's lifers. This case has been fully briefed since February 11, 2004. At issue is the Cal. Supreme ex post facto conundrum, *In re Rosenkrantz* (2002) 29 Cal.4th 616, holding that the State's statute and constitutional amendment authorizing governor's review and reverse BPH parole decisions are not ex post facto when used against lifers like Rosenkrantz whose offenses occurred prior thereto. A favorable decision (if affirmed on appeal) would effectively release about 98 lifers whose offenses occurred prior to 1988, but who remain imprisoned pursuant solely to a "governor's" reversal. (Rosenkrantz has two additional petitions pending — in federal and state court challenging denials of parole by two subsequent BPH panels.)

### FOOD FOR THOUGHT

#### *Bowie v. Carey*
U.S. District Court,
Eastern District of California,
No. 03-1172

Although the Court denied habeas pus relief, the judgment's profound, prescient reasoning is excellent research material and instills hopefulness. Warren Bowie, sentenced to 15 years-to-life for a 1985 second degree murder, sought relief from BPH's 1999 parole denial. The Court found no evidence to support most of the panel's rote grounds for unsuitability (particularly egregious commitment offense, insufficient parole plans, need for therapy), but found some evidence in Bowie's prior criminal record and not-too-remote prison disciplinary history sufficient to support the panel's decision. The Magistrate Judge's reasoning on several issues, including *Dannenberg* and use of the commitment offense to repeatedly deny parole is noteworthy:

"The Ninth Circuit stated [in *Biggs*] that '[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' F.3d at 917 . . . However, the California Supreme Court, having once seemingly agreed with the Ninth Circuit, see *In re Rosenkrantz*, 24 Cal. 4th 616, 683 (2002), stating that in order for the BPT to put weight on the exceptional nature of the crime (murder), the murder had to be 'particularly egregious,' has now defined that term as simply that the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." *In re Dannenberg* [citation]

"Of course, as the dissent in *Dannenberg* pointed out, this standard is completely unreviewable, *id* at 21."

(Continued on p. 14)

Exhibit D

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF CORRECTIONS**
**Parole and Community Services Division**
**P.O. Box 942883**
**Sacramento, CA 94283-0001**



This is in response to your recent letter requesting information concerning parole programs that are available to you upon your release. I commend you for taking the initiative to obtain this information.

The fact that you have no place to live or work does not have a bearing on your release to parole. To assist parolees with their rehabilitation while on parole, the Parole and Community Services Division (P&CSD) has developed and implemented numerous community-based programs. These include employment assistance services, computerized learning centers, residential facilities that provide multiple services to homeless parolees, and substance abuse treatment programs.

Currently, The P&CSD administers three employment programs, which are located throughout the State. One of these provides employment assistance services through State Employment Development Department job specialists, who are located within selected parole offices. Another program, the Offender Employment Continuum, helps parolees become self-sustaining by providing them with referrals to educational programs, vocational training and prospective employers. Additionally, the OEC works closely with the Prison Industry Authority (PIA) to assist parolees who have participated in PIA programs to find meaningful employment. The Parole Employment Program provides employment services such as workshops and job placement assistance to parolees through community providers.

In addition to the employment programs, there are the Computerized Literacy Learning Centers (CLLC) where a parolee can advance from early education through 12th grade and/or obtain a General Education Development Certificate. CLLCs are located within selected parole units throughout the State.

P&CSD also provides services to homeless parolees through Residential Multi-Service Centers (RMSC) which are located in Bakersfield, Fresno, Los Angeles, and Stockton. This community-based program provides lodging, meals, individual and group counseling, substance abuse counseling, parenting skills training, money management, life skills training and medical referrals. Assistance is also provided in obtaining Social Security cards and Department of Motor Vehicles identification. Other

services include job search and job retention training, and assistance in finding and obtaining employment. During transition planning, staff provides program participants with assistance in locating permanent housing in the community.

For parolees who have a history of substance abuse, the P&CSD operates several substance abuse treatment programs. These are located throughout the State and include the Substance Abuse Treatment and Recovery Program and the Parolee Services Network.

Programs and services are free of charge to all parolees. However, to access them, parolees must coordinate their enrollment through their assigned parole agent. After you have been assigned a parole agent, I encourage you to contact him or her for assistance in locating specific resources that may be available to you in your community.

I am enclosing a copy of the Parolee Information Handbook. The handbook identifies, to a limited degree, local service agencies and qualifying factors. It also outlines typical benefits such as clothing, housing, financial assistance and bonding for employment, which some parolees may or may not be eligible for.

When completing your pre-parole plans, Release Program Study (CDC Form 611), with your assigned correctional counselor, you should discuss any parole issues you may have including changes in your county and out-of-state parole. I also recommend that you request, through your correctional counselor, participation in the institution's Pre-release Program.

I hope you find this information helpful.

Sincerely,

D. L. Lamotta

D. L. LAMOTTA
Chief, Program Support Unit
Parole and Community Services Division

Enclosure

cc: Correctional Counselor

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, __HAROLD D. DYSON_____, declare:

I am over 18 years of age and I am party to this action.  I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

> HAROLD , DYSON_____, CDCR #: __C-80683____
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: __Z-341-L_____
> SOLEDAD, CA  93960-0689.

On _FEBRUARY 22,2008_____, I served the attached:

**"TRAVERSE TO RETURN"**

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows:    **"OFFICE OF THE CLERK"**
> **UNITED STATES DISTRICT COURT**
> **NORTHERN DISTRICT**
> **450 GOLDEN GATE AVE**
> **SAN FRANCISCO, CALIF. 94102**

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on _FEBRUARY 22, 2008_____  .

> **HAROLD D. DYSON**
> _Harold W. Dyson_
> Declarant

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
HAROLD , DYSON (C.C.P. §§ 1013(A), 2015,5)

I, _____, declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

    HAROLD D. DYSON      , CDCR #: C-80683
    CORRECTIONAL TRAINING FACILITY
    P.O. BOX 689, CELL #: Z-341-L
    SOLEDAD, CA  93960-0689.

On  FEBRUARY 22, 2008             , I served the attached:

"TRAVERSE TO RETURN"

_____

_____

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:     DEPARTMENT OF THE JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
             455 GOLDEN GATE AVE
             SAN FRANCISCO, CALIF. 94102-7004

    I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on  FEBRUARY 22,2008        .

                          HAROLD D. DYSON
                          Harold D. Dyson
                          Declarant