IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD D. DYSON, | No. C 07-4955 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden, | |
| Respondent / | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

In 1984, in Alameda County Superior Court, petitioner pled guilty to charges of second degree murder, and was sentenced to a term of fifteen years to life in state prison. In 2006, the California Board of Prison Terms (the "Board") found him unsuitable for parole for the seventh time. He challenged this decision unsuccessfully in habeas petitions filed at all three levels of the California courts.

///

**DISCUSSION**

**I.  REQUESTS FOR JUDICIAL NOTICE**

Petitioner has filed two motions for judicial notice of cases decided in the state courts. It is unnecessary for courts to take formal judicial notice of cases; to the extent they are relevant and properly applicable on collateral review, cases that have been decided by the time of ruling will be considered. The motions will be denied as unnecessary.

**II.  MERITS**

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

2

1  incorporating." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support
2  granting the writ.  *See id.* at 409.

3      "Factual determinations by state courts are presumed correct absent clear and
4  convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not
5  altered by the fact that the finding was made by a state court of appeals, rather than by a state
6  trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,
7  1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and
8  convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory
9  assertions will not do. *Id.*

10      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination
11  will not be overturned on factual grounds unless objectively unreasonable in light of the
12  evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres*
13  *v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

14      When there is no reasoned opinion from the highest state court to consider the
15  petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501
16  U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

17      **B.**    **ISSUES PRESENTED**

18      Petitioner contends that (1) the Board violated his right to due process because the
19  decision to deny him parole was not based on at least "some" evidence; (2) the Board's decision
20  was based on a "no parole policy" and a "systemic bias" against granting parole, which violated
21  his right to due process.

22      Among other things, respondent contends that California prisoner have no liberty
23  interest in parole and that if they do, the only due process protections available are a right to be
24  heard and a right to be informed of the basis for the denial – that is, respondent contends there
25  is no due process right to have the result supported by sufficient evidence.  Because these
26  contentions go to whether petitioner has any due process rights at all in connection with parole,
27  and if he does, what those rights are, they will addressed first.
28  ///

3

### 1. RESPONDENT'S CONTENTIONS

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

#### a. LIBERTY INTEREST

Respondent contends that California prisoners have no liberty interest in parole. Respondent is incorrect that *Sandin v. Conner*, 515 U.S. 472 (1995), applies to parole decisions, *see Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*."), and, applying the correct analysis, the California parole statute does create a liberty interest protected by due process, *see McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."). Respondent's claim to the contrary is without merit.

#### b. DUE-PROCESS PROTECTIONS

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, he contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

///
///

4

### 2. PETITIONER'S CLAIMS

#### a. "Some Evidence" Claim

Petitioner contends that denial of parole was not supported by "some evidence" and thus violated his due process rights.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

The description of the crime that the Board relied upon was taken from a letter to the probation department from a prosecutor at the time of sentencing, there being nothing else in the record upon which to rely (Exh. B at 4). Petitioner stated that he did not wish to make any corrections or additions (*ibid.*).

The crime occurred when petitioner was in a minor traffic accident with the victim (Exh. C at 1). A police officer arrived and talked to the drivers to prepare a report; petitioner asked the officer if he was going to arrest the victim, and the officer answered no, that it was not usual to do so (*ibid.*). While the officer was stepping off distances he heard two "pops," turned and saw that petitioner had shot the victim at close range (*ibid.*). Petitioner dropped the gun, raised his hands, and said "that's right, I shot the son of a bitch." (*Ibid.*) Attempts to resuscitate the victim were unsuccessful and he was declared dead at the hospital (*id.* at 2). Petitioner's

1  explanation for the crime was that he "had a lot of mental pressure" that caused him to "lose his
2  head." (Exh. D (probation officer's report) at 2)
3        In addition to the facts of the offense, evidence supporting the denial included that he
4  had not made any efforts to learn a vocation since 2000 (Exh. B at 8, 31-32), despite having
5  been advised to "upgrade vocationally" by the parole hearing panel in 2003 (*id.* at 6-8, 34); had
6  not participated in any "self-help" groups, despite having been asked to do so by the 2003 panel
7  (*id.* 7, 9); and, despite having waived an earlier hearing to allow him to "firm up" his job
8  prospects, had only an undated letter from his brother mentioning work at the brother's rooming
9  house (*id.* at 6-7, 29).
10        The parole decision at issue here was in 2006, when petitioner had served about twenty-
11  two years on a fifteen-to-life sentence. It apparently was his seventh parole denial. The crime
12  was exceptionally cruel, random and inexplicable, but whether that makes petitioner more
13  culpable or suggests a mental illness, a great deal of time has passed since it was committed,
14  and presumably its evidentiary value for predicating present dangerousness has faded
15  significantly. *See Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003) (implying that passage
16  of time lessens evidentiary value of facts of offense). On the other hand, petitioner seems not to
17  have complied with the 2003 panel's suggestions that he upgrade vocationally and participate in
18  self-help programs, and despite a postponement to allow him to firm up his work plans, he did
19  not do so.
20        The Court's review in this sort of case is extraordinarily deferential. The "some
21  evidence" standard itself is deferential, and added to that is the federal habeas standard
22  forbidding a grant of habeas relief unless the state court decisions were contrary to, or an
23  unreasonable application of, clearly-established United States Supreme Court authority. As a
24  practical matter, in most cases, including this one, this standard means that to grant relief it
25  would be necessary to conclude that the state courts' decisions were "unreasonable," on a
26  question where there already is a great deal of deference.
27        The evidence recited above was "some evidence" to support the Board's decision, and
28  even if it was not, the rejections of these claims by the state appellate courts were not contrary

6

1 to, or unreasonable applications of, clearly-established United States Supreme Court authority.

**b.   Bias**

Petitioner contends that the Board is systemically biased in that it denies parole in almost all cases. The record shows that the Board reviewed the evidence extensively and discussed it with petitioner and his attorney (Exh. B at 6-37). The Board's decision explains the facts it relied upon in finding him not suitable for parole (*id.* at 44-50). Both these factors tend to negate the accusation of bias, and petitioner has not provided any evidence that would show otherwise. The state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

**CONCLUSION**

Petitioner's motions for judicial notice (documents numbered 7 & 8 on the docket) are **DENIED** as unnecessary. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April ___1___, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\DYSON4955.RUL.wpd